VICTOR B. BUCK, Respondent, *vs.* MAHLON ASHBROOK, and MARY ANN ASHBROOK, Appellants.

1. *Estate of married woman—Fund invested for, pursuant to bequest—Exemption of from husband's debts—Constr. Stat.—Failure to identify trust fund, etc.*—Land purchased by the executor, in the name of a married woman, pursuant to the directions of a will, with funds derived from the sale of real estate of the testator, are under the statute (Wagn. Stat., 935, ? 14) exempt from sale for the debts of her husband. And this is the case whether the land is conveyed to her in the ordinary way, or to her sole and separate use; but where the fund thus set apart for the wife's benefit is so employed or invested as to become mixed with other funds, and to render it impossible to identify or trace it, equity cannot interfere.

2. *Equity—Land sold to satisfy debts—Homestead, etc.*—Where one buys land in his wife's name, and the conveyance is set aside on ground of fraud, and the property sold to pay his debts, there would, notwithstanding, be no error on the part of the court in allowing him a sum from the proceeds, with which to procure a homestead provided such debts were subsequent in point of time to the statutory exemption.

*Appeal from Buchanan Common Pleas.*

*Ensworth, with Hill & Carter,* for Appellants.

I. The lots are not subject to the payment of respondent's debts. (Sto. Eq., §§ 1068, 1072; Lead. Cas. Eq., vol. 2. part 2, pp. 334, 336, side p. 685, &c.; Hale vs. Coe, 49 Mo., 181; Gates vs. Hunter, 3 Mo., 511; Craig vs. Leslie, 3 Wheat., 578.)

*A. H. Vories,* for Respondent.

SHERWOOD, Judge, delivered the opinion of the court.

This is a proceeding in the nature of a bill in chancery, brought against the defendants, who are husband and wife, by which it is sought to subject certain real estate held by the wife, to the debts of the husband, on the grounds that he was in embarrassed circumstances, and largely indebted, and in order to hinder, delay and defraud his creditors, both prior and subsequent, caused the real estate which he bought from time to time, to be conveyed to his wife; that during the time that he was thus engaged, that is to say, from the year 1859 to the year 186-, he did business in the name of his wife, borrowed money, dealt as a merchant in goods, wares and merchandise, falsely and fraudulently representing that his

wife was a sole trader; that he had full power to contract and to do business in her name, and that her property would be bound by such contracts, and that the wife was doing all in her power to aid and abet her husband in his fraudulent designs of thus acquiring property, and of placing the same out of the reach of his creditors, by a conveyance to herself.

The defendants filed separate answers. That of the husband, Mahlon Ashbrook, admitted that he purchased the real estate in question and had the conveyance made to his wife ; but claimed that this was done without any fraudulent intent, and that the purchase of such property was made with money which the wife derived through her father's will, and with the profits which he had realized by employing this money in business he had bought the property sought to be charged, and made the improvements thereon. He also admitted his insolvent condition from the time of his arrival in St. Joseph up to the time of filing his answer, and of his carrying on business in his wife's name, but denied that this was done to defraud his creditors, etc. The answer of the defendant, Mary A. Ashbrook, was of similar purport to that of her husband ; and she admits that she knew that he was embarrassed and was using her name, both in the sign over his store, and also in buying goods, etc; but that she protested against such use of her name, etc., etc. The new matter of these answers was denied.

. The court, upon hearing the testimony, gave judgment for the recovery of the plaintiff's debt, and decreed a sale of the property mentioned in the petition; but directed that such sale should be subject to a deed of trust executed by the defendant to secure Adam Flesher and others on a debt of the husband, and that out of the proceeds of such sale should be paid, first to the wife the sum of $3,000, then to the husband $1,000, for his homestead, and then that the plaintiff's debt should be satisfied.

The will referred to in the answers of the defendants, bequeathed eighty acres of land in Hocking County, Ohio, to

the defendant, Mary A. Ashbrook, with the request that if sold its proceeds might be invested in her name; and by another clause of the will the proceeds of 116 acres of land in Fairfield county, in the same State, after certain deductions, were devised to her, with the request that the proceeds be invested in the name of Mrs. Ashbrook and her children alone. This will was that of James Chambers, the father of Mrs. Ashbrook; was probated in Ohio, and her husband was the executor.

Treating the precatory words of the will as words of command, there can be no doubt that it was the duty of the executor to have re-invested the proceeds of the sale of the Ohio lands in other real estate, in conformity to the terms of the will; and that such real estate, when thus purchased, whether from the proceeds of the eighty acre or one hundred and sixteen acre tract, would be exempt from sale for the debt of the husband. Because the proceeds of the last named tract, when re-invested, as desired by the will, would have been the separate property of the wife for life, with remainder to her children. And it is equally certain, that land purchased out of the money arising from the sale of the tract first named, being conveyed in the name of the wife, would vest the fee in her, and would also be exempt under that section of our law respecting married women, which prohibits the sale of land acquired by the wife prior to marriage or during coverture, by gift, grant, devise or inheritance, for the satisfaction of the sole debts of the husband. (*Wagn. Stat., 935*, § 14.) And the prohibitions of this section apply as well to lands conveyed to the wife in the ordinary way, as to those settled with more formality, to her sole and separate use. (Hale vs. Coe, 49 Mo., 181.)

I do not feel warranted, after a careful perusal of the evidence, in arriving at the conclusion that the wife is justly chargeable with any complicity in the fraud alleged against herself and husband. But on the other hand, I have been unable to resist the belief, or avoid the impression which that evidence has produced upon my mind, that it was the

settled intention and persistent design of the husband, manifested during a series of years, and, in a variety of ways, not necessary to detail here, to baffle his creditors, by doing business, signing notes and taking conveyances, in the name of his wife. And the court below evidently arrived at the same conclusion when it decreed the sale of the land sought to be subjected to the payment of plaintiff's debt.

I cannot, however, fully concur in the result reached in that decree, in so far as it postponed the demand of the plaintiff to the incumbrance of those who were not parties to the suit, and were not in any manner making any assertion of their rights, and in so far as it ordered the payment to the wife of $3,000.

There would appear to be no error in allowing to the husband a certain sum for the purchase of a homestead, nor in decreeing that this amount should have priority over plaintiff's claim; because, notwithstanding the evident designs which he entertained towards his creditors, this could not deprive him of the benefits conferred by the law as to all debts except those contracted prior to its passage ; and the debt in question was not contracted until December, 1st, 1866, long after the passage of the law which exempted homesteads from execution. And although the designs of the husband were very apparent in respect to his creditors, this should not be allowed to prejudice the rights of his wife under the terms of her father's will. But while it is undoubtedly true that a court of equity will throw safeguards around, and see to the proper application of a trust fund, and will follow it so long as it can be clearly and distinctly traced, yet it is equally true that when the means of its identification fail, the powers of the court in reference to that fund must also cease. (2 Sto. Eq. Jur., §§ 1210, 1258–9; 3 Sugd. Vend., 270, 272, and cases cited.)

And just here the chief difficulty in this case arises ; it being impossible to trace the trust fund with anything like satisfactory certainty, and the testimony of Ashbrook himself sheds but little, if any, light upon the subject, and he of all

other persons, ought to be capable of conveying direct and positive information in reference to this matter. In regard to the use of the funds entrusted to him as executor, his own testimony is, that he used "part in business, part in improvements, and part in the purchase of the lots in controversy." Such statements are by far too indefinite to form the basis of a decree allotting the lands in question to the use of the wife, or of creating a charge thereon for her benefit, to the extent of the trust fund misappropriated. In addition to this, the meager and unsatisfactory testimony of the husband is contradicted by his admissions to Carter, and indeed by all the facts and circumstances of the case; and no explanation of even a plausible nature, is afforded of the singular correspondence which existed between the rapidly increasing indebtedness on the one hand, and an equally rapid acquisition of real estate in the name of the wife on the other.

The judgment will be reversed and the cause remanded; Judges Vories and Hough not sitting; the other judges concur.