Van Liew v. Galtra.

JOHN J. VAN LIEW AND JOHN G. SCHOMP, administrators of Dennis L. Van Liew, deceased,

*v.*

THOMAS GALTRA, AND JAMES J. BERGEN, administrator of Catharine E. Van Liew, deceased.

Where the wife, surviving the husband, or her representative, after his death, claims money remaining in the homestead on the death of the husband, it is not enough to show that she once earned money, nor that she received a portion from her father's estate, nor that her husband at times gave her money, without further identifying such sums and showing that the moneys in question are the same, or that the moneys so earned or received by the

wife passed to the husband without a lawful consideration. It must appear that at the time of his death he was her debtor.

---

*Mr. John Schomp*, for complainants.

*Messrs. Gaston & Bergen* and *R. V. Lindabury*, for defendants.

BIRD, V. C.

The bill in this case is filed by John J. Van Liew and John G. Schomp, as administrators of Dennis L. Van Liew, deceased, against Thomas Galtra, and James J. Bergen, administrator of Catharine E. Van Liew, deceased, to determine the right to $5,441.49, which was deposited by the said John L. Van Liew in the National Iron Bank at Morristown. The following recital will show the principal facts upon which the question has arisen :

The said Dennis Van Liew and the said Catharine were husband and wife. They had been married about thirty-one years. He died on the 21st day of September, 1881, and she the next. This money and notes of hand and bonds and mortgages were found in the house where they had lived since their marriage. He had been engaged in hotel-keeping about two years prior to their marriage, and continued it until his death, she living with him during all their married life as his wife. This business was conducted in his name. She had no separate business. In 1873 she received from commissioners, who sold the real estate of which her father died seized, $2,406, in money, notes and bonds and mortgages, of which at least $1,571.25 were in these securities, which securities were retained by her until her death, and were unmistakably identified by the witnesses. A small amount of this money was in the till in the bar, $36 in a small trunk, which had no lock on it, and all the rest in a larger trunk, which was locked. The $36 had been placed in the small trunk after Mr. Van Liew's death. The trunks were in a small closet or clothes-room. The key to the large trunk was usually carried by Mrs. Van Liew, with three or four other keys belonging to locks on doors or other places in the house.

Mr. Van Liew would at times ask her for the keys, and whenever he did so he got them, and kept them at his own pleasure. There was no other place so suitable in the house in which to keep money and valuable papers. In the trunk were a shawl of hers, a vest and pair of pantaloons of his, the deed to Mr. Van Liew for the property on which they lived, an insurance policy on his house, notes of hand belonging to him, receipts to him for payments made by him, four pocket-books, all well worn, and all this $5,441.49 in currency, gold, silver and pennies. Her name was on the loose box in the trunk, being a part of the trunk. The initial letters of her name were on one of these old pocket-books, and it is claimed that it contained $2,655 of the money, in currency. One pocket-book contained $670. There was in this trunk a small bag, like a small salt-sack, which contained $1,307.50 in gold. One small bag contained $400 and one $200 in silver. All the rest was spread over the pantaloons and vest in the bottom of the trunk, or was found in the till of the bar. He was taken sick first. When she was taken sick she handed all the keys to a servant girl, who laid them in a box, from whence they were taken by Mrs. Galtra, the wife of one of the defendants, after Mr. Van Liew died. After Mrs. Van Liew died, the complainant, John L. Van Liew, and the defendant, Thomas Galtra, carried this money to the bank of the defendant, and deposited it in their own names, for which they took a certificate of deposit which declared it to be payable to their order on return of the certificate. This certificate the complainant, John L. Van Liew, has endorsed, but the bank refuses to pay the money without the endorsement of Mr. Galtra, which he declines to give.

The complainants claim that they, as administrators of Dennis L. Van Liew, are entitled to all this money, and that Mr. Galtra should join in making the proper endorsement of the certificate, so that they can draw it. Mr. Galtra declines, because he thinks Mrs. Van Liew, who was his sister, was the owner of all or a portion of the fund, and that it should go to the defendant, Mr. Bergen, as her administrator. In his answer, Mr. Bergen claims the whole, but in case that should fail, then

the sum of $824.75, the difference between the value of the securities now on hand, which she received and which were in the trunk, and the sum of $2,406, the whole amount which she received from her father's estate.

At the time of the death of Mr. Van Liew, whose money was this? Was it all Mrs. Van Liew's? If not, was any part? If any part, how much? If the evidence will not give it all to her, will it any part? In other words, is there any evidence upon which a decree can be based, showing that any portion of this money, less than the whole, was Mrs. Van Liew's at the time of her husband's death? Remembering the fact that Mrs. Van Liew was a married woman, these inquiries reveal the difficulties of the defendants' case.

It is claimed that Mrs. Van Liew received from her father's estate $824.75. Supposing this to be clearly established, is there any proof showing what became of it afterwards? I fail to discover any. It is not traced or identified beyond the payment to her. The money Mr. Randolph speaks of was no part of it, for the transaction or interview which he details took place long before she received the $824.75, and she told him that she had then had it so long that she had forgotten it. Neither the claim to the $824.75 nor to the sum referred to by Mr. Randolph seems to me to be well established.

As to the whole fund, the claim is based on the allegation in the answer that it was in her possession. It was found in her trunk, the key to which she carried, except when her husband wanted it. In addition to this, testimony was offered, showing what had passed between Mr. and Mrs. Van Liew with respect to their possessions or interests. One circumstance, above adverted to, is described by Mr. Randolph. It was over eleven years ago. He had taken dinner with Mr. and Mrs. Van Liew at his invitation. After dinner, and when he and Mr. Van Liew were alone, Mr. Van Liew asked him if he was going to Somerville the next day, and he said he was. Then Mr. Van Liew said: "My wife has got some Somerset county money, and I want you to take it down and get it changed." The witness added:

Van Liew v. Galtra.

"Then he went in the other room and they had some talk about it; I heard them conversing together and in a few moments he appeared with the money and threw it on my lap; I forget the amount, but there was between $200 and $300; she came to the dining-room door and stood half-way in the door and laughed; I said 'Liz, how came you to keep this money·so long?' and she said 'I forgot I had it;' then they said they wanted me to take it to Somerville and see what John Veghte could do with it."

When Mr. Van Liew threw the money in the lap of the witness, he said: "There, you see what a business woman I have got, or something like it." The witness did not take the money; but he says that afterwards Mr. Van Liew told him "that he had got dollar for dollar for it." Were it clear from this evidence that this money was hers, as in the previous case, it does not appear what became of it. If the statement is taken as a whole, as it must be, then it would appear that Mrs. Van Liew earned this money so long before that she had forgotten it, and that Mr. Van Liew had got "dollar for dollar" for the bills, leaving the possession in him; and this he would be protected in as the law then stood. I cannot understand that this branch of the defendants' case in any wise strengthens their claim to the whole fund.

Other occurrences are given by Amanda Wilson, who worked in the family the last six months of Mr. Van Liew's lifetime. About six months before his death she was present at the dinnertable and heard a conversation between Mr. and Mrs. Van Liew about some gold. At first she could not recall what either said. She afterwards said: "I remember him giving her gold," at which time she says he said: "This is yours, Lizzie; this is what I owe you." The witness did not know how much gold there was. She did not see it. It was in a small bag like a salt-sack. No receipt was given, nor was there any accounting. He did not say how much there was, nor did she inquire. There is no evidence, except this declaration, of any indebtedness. I think the observation is just, that if these persons were treating each other as debtor and creditor, and in that capacity, so much as a bag of gold, more or less, passing at one transaction, there would have been some written evidence of it, or at least an ascertain-

ment by actual count on the delivery of what was tendered in liquidation of any debt. Miss Wilson says that while she was there she saw Mr. Van Liew hand his wife gold several times. What amount she never learned. Nor was she able to tell what Mrs. Van Liew did with it. On one occasion only is the witness able to recall anything that was said. There is no evidence from any source as to the amount of gold that passed on any of these occasions, and what was said on that one is wholly insufficient to satisfy the mind that the husband was discharging an obligation, or the others to make a gift. Besides, it is not shown that Mrs. Van Liew carried these moneys to the trunk, or deposited them elsewhere, or in the same or any other form retained them until her death. Notwithstanding the wise liberality of the courts toward married women in the preservation of their separate estates, it is believed that none have gone so far as to allow either married women or their representatives to retain personal property as against their husbands or their representatives, upon such slight proof as that offered to sustain this branch of the case is deemed to be.

But a further reason why judgment should pass for the defendants for the whole fund is offered, which is that Mrs. Van Liew had the absolute possession and control of it at the time of her husband's death, because it was in her trunk, the key of which she carried. I cannot concur in this view. It is too broad to admit of any special or general application to cases where confidential relations exist. The control allowed her was not in the ownership of the trunk or the pocket-books, but in the possession of the key. If this be enough to carry the case, then upon a like principle the contents of stores, safes and bank-vaults could be claimed by confidential clerks entrusted with the keys thereto. But whatever weight the facts stated and urged on this branch of the case may otherwise merit, it is, I submit, overcome by the uncontradicted testimony of Miss Wilson, who says that Mr. Van Liew obtained the keys whenever he wanted them, and retained them at his own will.

I think that when the wife, surviving the husband, or her representative, after her death, claims money remaining in the

homestead on the death of the husband, it is not enough to show that she once earned money, nor that she received a portion from her father's estate, nor that her husband at times gave her money, without further identifying such sums and showing that the moneys in question are the same, or that the moneys so earned or received by the wife passed to the husband without a lawful consideration. It must appear that at the time of his death he was her debtor. The courts have not yet said that recent legislation has so transformed the marital relation as to secure to the wife more than the favors which the husband formerly enjoyed. Doubtless the same presumptions and rules of evidence are to be applied in this case as formerly. *Walker v. Reamy, 36 Pa. St. 410; Peavin v. Capewell, 45 Pa. St. 89; Buck v. Ashbrook, 59 Mo. 200; Bradford's Appeal, 29 Pa. St. 513.*

I think the complainants are entitled to the fund in bank, and that it is the duty of Mr. Galtra to endorse the certificate referred to, and will advise a decree accordingly.