PHILLIPS *et al.* v. OVERFIELD *et al., Plaintiffs in Error.*

1. **Resulting Trust:** FIDUCIARY PURCHASING WITH TRUST FUND. Where a fiduciary purchases property with the trust funds and takes the title in his own name a trust will result in the latter to the persons entitled to the fund.

2. ———: ———. The foregoing principle applies to executors and administrators who purchase property with money belonging to the estate and in such cases a trust results to the heirs and legatees.

3. ———: ———. But heirs and legatees have no preference over creditors where means of identification fail.

4. ———: ———: CHANGE OF CHARACTER OF TRUST PROPERTY. The mere change of the fund or trust property from one state or fund to another will not defeat the trust; the trust will attach to the property which is the product or substitute of the original thing and the trust ceases only when the means of ascertainment fail.

5. ———: ———: ———. Where, however, property is turned into money and mixed in a general mass of property of a like description, the trust ceases.

6. ———: ——— : ———. Where it is sought to follow money into land and to impress the latter with a trust, the money must be distinctly traced and clearly proved to have been invested in the land. It is not sufficient to show the possession of money of the estate by the trustee and the purchase of the lands by him. (*Harrison v. Smith*, 83 Mo. 210, *distinguished*.)

*Error to New Madrid Circuit Court.*—Hon. J. D. Foster, Judge.

REVERSED AND REMANDED.

*Wilson Cramer* for plaintiffs in error.

(1) The petition does not state facts sufficient to constitute a cause of action. (2) In a proceeding to establish a resulting trust the burden is on the plaintiff, and the proof must be so clear and conclusive as to leave no reasonable ground for doubt. *Philpot v. Penn*, 91 Mo. 38; *Jackson v. Wood*, 88 Mo. 76; *Rodgers v. Rodgers*, 87 Mo. 257; *Shaw v. Shaw*, 86 Mo. 594; *Kennedy v. Kennedy*, 57 Mo. 73. (3) The evidence introduced to show a resulting trust in favor of the estate of Shapley R. Phillips falls far short of the requirements of the law. (4) The law prohibiting administrators from buying applies to probate sales only. *Dillinger v. Kelley*, 84 Mo. 561. (5) There is not a word of evidence to the effect that one dollar of the money of Shapley R. Phillips' estate went towards the purchase of these lands, while to establish a resulting trust the ownership of the money used must be clearly shown. *Shaw v. Shaw*, 86 Mo. 594; 2 Story's Eq. [Redfield's Ed.] sec. 1210. (6) The settlement of Amos R. Phillips, introduced by plaintiffs, establishes that he accounted for $138,154.67, more than his total inventory and appraisement, besides admitting on final settlement a balance of $25,382.15 due the estate. (7) This showing directly

negatives the charge that Amos R. Phillips misapplied assets of his father's estate in the purchase of the lands in suit. It is just as likely that it was the money of his creditors whose claims are allowed against his estate, that paid for these lands. In fact, the proof shows this to be so in part. (8) Where the means of identifying the trust fund fail, the powers of a court of equity with reference to it cease. *Buck v. Ashbrook*, 59 Mo. 200. (9) The final settlement of the estate of Shapley R. Phillips made by Amos R. Phillips and approved by the probate court in September, 1872, has the force and effect of a final judgment and is conclusive upon the question of his indebtedness to the estate. (10) Having elected to proceed against the bond, plaintiffs cannot maintain this suit. The positions are inconsistent. Perry on Trusts [2 Ed.] sec. 843; Bigelow on Est. [2 Ed.] p. 503; 2 Story's Eq. [Redfield's Ed.] sec. 1262. (11) The plea of the statute of limitations set up in the answer should have prevailed.

*D. H. McIntyre* for defendants in error.

(1) If the facts stated in the plaintiffs' petition are true, under the rules of law they are entitled to relief, and their petition is good, and it states all the facts necessary to entitle them to the relief asked. Bliss on Code Pleading, sec. 5; *Battel v. Crawford*, 59 Mo. 215; *Cummings v. Winn*, 89 Mo. 51; *Burkholder v. Trust Co.*, 82 Mo. 572; *Pomeroy v. Benton*, 57 Mo. 531. (2) This case is one of a resulting trust, and the trust may be established by parol, and, although the proof is required to be clear, yet circumstantial proof may be sufficient, such as that the circumstances of the trustee were so limited that it was impossible that he could have purchased the estate with his own means. Perry on Trusts [3 Ed.] secs. 127, 137; *Paul v. Chouteau*, 14 Mo. 580; *Keeton v. Keeton*, 20 Mo. 530; *Lee v. Fox*, 6 Dana, 171; *Pugh v. Pugh*, 9 Ind. 132;

Phillips v. Overfield.

*Johnson v. Dougherty*, 3 Green Ch. 406. But the main point in inquiries of this kind, and especially so in this case, is the ownership of the purchase money, whether the purchases of land alleged to have been made by the administrator were made with his money or that of his intestate. That they were made with the money of his intestate is shown by the testimony of witnesses on behalf of plaintiffs beyond any grounds of reasonable doubt; from this springs a resulting trust which carries the ownership of the money into the land in which it was vested. *Shaw v. Shaw*, 86 Mo. 594, 598; *Harney v. Donohoe*, 97 Mo. 141. (3) The doctrine of estoppel cannot be invoked by defendants against the plaintiffs. Estoppels are odious in law. They are not admitted in equity against the truth. 1 Serg & R. 442, 444. Courts of equity reject estoppels and will pursue the actual truth and determine accordingly. Perry on Trusts [3 Ed.] sec. 416; *Harden v. Parsons*, 1 Eden, 147; *Fellows v. Mitchell*, 1 P. Wms. 83. (4) None of the defendants claim to have been deceived or misled by any acts or conduct of Murray Phillips. Nor have they at any time acted or altered their situation in consequence of such acts and conduct. Neither were they influenced in any manner by Murray Phillips to give credit to Amos Phillips, or deal and have transactions with him, as they appear to have done, therefore they cannot avail themselves of the benefits of estoppel. *Bales v. Perry*, 51 Mo. 449; *Austin v. Loring*, 63 Mo. 19; *Noble v. Blount*, 77 Mo. 235; Bigelow on Estop. [3 Ed.] 484. Acts done by Murray Phillips as executor of Amos R. Phillips cannot have the effect of estopping Murray Phillips in a proceeding in his individual character or in some other official character. Bigelow Estop., p. 65. (5) The pendency of the suits instituted in 1876, on the bond of Amos R. Phillips, did not stand in the way of the plaintiffs instituting this proceeding in equity. *Biddle v. Ramsey*, 52 Mo. 153; *Paris v. Haley*, 61 Mo. 453; 1 Wait's Act. & Def., p. 150.

BLACK, J.—This is a suit in equity by Murray Phillips in his own right and as guardian of Amos P. Klein, a minor, against the administrator *pendente lite* of the estate of Amos R. Phillips and the creditors of said estate to enforce a resulting trust.

The following is an outline of the facts:

Shapley R. Phillips died at the county of New Madrid, in this state, in the early part of 1863, leaving a large estate consisting of lands, personal property and slaves. He left a widow, Adele T. Phillips, who elected to take a child's part, and one son by her, and also one daughter and two sons by a former marriage, namely, Sallie D., Amos R. and Murray Phillips. The estate therefore descended to the widow and children in five equal parts. Amos R. Phillips administered upon his father's estate in 1863, and the administration had not been closed when he died, which was in the year 1873. In the meantime the widow and her son died, the son dying first, and the widow left as her heirs David Stengle, Mary Stengle and Mattie Dormer. Sallie D. Phillips married Leroy Klein; both died, leaving one child, Amos P. Klein, whose name was changed to Amos R. Phillips, but he will be designated by his original name; it does not appear when his parents died.

The inventory filed by Amos R. Phillips in 1863, as administrator of Shapley R. Phillips, discloses lands to the amount of nearly three thousand acres, notes and accounts and allowances against estates aggregating, with accrued interest, eighty-eight thousand, seven hundred and thirty dollars, and an appraisement bill of other personal property and slaves amounting to twenty-six thousand, eight hundred and sixty-two dollars. The eighth and final settlement of Amos R. Phillips was filed in the probate court in September, 1872, nearly ten years after the grant of letters of administration; this settlement shows a balance due the

estate of twenty-five thousand, three hundred and eighty-two dollars, and was approved by the probate court. David and Mary Stengle and Mattie Dormer appealed to the circuit court, and at the March term, 1873, the matters in dispute were referred.   In August of the same year the referee reported a balance due the estate of seventy-one thousand, eight hundred and ninety-four dollars; and to this report exceptions were filed by the administrator.   Before these exceptions were heard, Amos R. Phillips died testate; and Murray Phillips was appointed administrator *de bonis non* of the estate of Shapley R. Phillips, executor of the last will of Amos R. Phillips and guardian of the minor, Amos P. Klein. At this juncture of affairs Murray Phillips purchased the interest of David and Mary Stengle and Mattie Dormer in the estate of Shapley R. Phillips.

The further history of the final settlement as disclosed by disconnected scraps of evidence is this : Stengle and others, the appellants, and Murray Phillips, as administrator *de bonis non* of Shapley R. Phillips appeared in the circuit court at its September term, 1874, and represented to the court that all matters of dispute had been adjusted, and the appeal was dismissed by consent.   At the March term, 1876, the appellants moved to reinstate the cause, but the court overruled the motion.   An entry made at the September term, 1876, shows that the appellants appeared by attorney, and that Murray Phillips appeared for himself and as administrator *de bonis non* of the estate of Shapley R. Phillips, and as executor of Amos R. Phillips, and as guardian of Amos P. Klein; that the exceptions to the report of the referee came on to be heard and were overruled and the report confirmed; and it was adjudged that there was in the hands of Amos R. Phillips, late administrator of Shapley R. Phillips, the sum of seventy-one thousand, eight hundred and ninety-four dollars for distribution, and it was further ordered that a copy of the judgment be certified to the probate court.

While Amos R. Phillips was the administrator of his father's estate, he purchased a large amount of lands and other property. This property, remaining on hand, was inventoried by his executor, Murray Phillips; and in 1874 the executor procured an order to sell the lands for the payment of debts, but made no sale. In 1880, Murray Phillips for himself and as guardian of the minor child, Amos P. Klein, brought this suit against the creditors of Amos R. Phillips. The substance of the charge is that Amos fraudulently converted to his own use the assets of his father's estate, and with such assets purchased the personal and real property specified in the inventory filed by the executor; and the plaintiffs seek to have declared and enforced a resulting trust in all of the property in the proportion of their distributive shares in the estate of Shapley R. Phillips. The court awarded a decree according to the prayer of the petition.

The first question is whether the evidence makes out a case for declaring a resulting trust as to either the personal or real estate. The estate of Amos R. Phillips is insolvent and all of the sureties on his bond as administrator of his father's estate are insolvent, except one person, and it is clearly shown that not more than two or three thousand dollars can be collected of that surety. When Amos administered upon his father's estate, he was twenty-two years old and just out of school. He owned some nine thousand acres of land which had been conveyed to him by his father in the preceding year. About fifteen hundred acres of this land was cleared, and as we understand the evidence was in cultivation. He had no other property worthy of mention. The personal assets of his father's estate amounted to something over one hundred thousand dollars. Of this property, slaves to the appraised value of sixteen or seventeen thousand dollars were distributed among the heirs early in the administration. From 1863 to 1873,

and while Amos R. Phillips was administering upon the estate he carried on his own farm. He bought and sold mules and other live stock in large numbers, and he and his brother Murray purchased a wharf boat, and as partners carried on a boating business. The evidence is, that heavy losses were sustained in all of these ventures. During this time he purchased a large quantity of lands, the deeds put in evidence showing the aggregate consideration of over fifty thousand dollars. The defendants put in evidence the inventory of the estate of Amos R. Phillips, filed by Murray Phillips, the executor, in 1873, which shows notes and accounts to the amount of seventy-five thousand dollars, most of which are worthless, and a sale bill of personal property amounting to the sum of sixty-six hundred and fifty-eight dollars. The debts allowed against the estate amount to sixty thousand dollars, besides the amount due to the distributees of the estate of Shapley R. Phillips. Some of these debts allowed against Amos' estate are evidenced by notes given by him in the purchase of lands against which the plaintiffs seek to enforce a resulting trust. It is upon evidence of this general character that the circuit court based its decree.

If a person holding a fiduciary character purchase property with the trust funds in his hands and take the title in his own name, a trust in the property will result to the persons entitled to the fund with which the property was purchased. This principle of law applies to executors and administrators who purchase property with the money belonging to the estate; and in such cases a trust results to the heirs and legatees. 1 Perry on Trusts [3 Ed.] sec. 127. But the distributees and legatees have no preference over the other creditors, where the means of identification fail. 1 Perry on Trusts [3 Ed.] sec. 128. In *Buck v. Ashbrook*, 59 Mo. 200, the evidence was that the money intrusted to the executor had been used "part in business, part in

improvements, and part in the purchase of the lots in controversy." And it was held that such evidence was too indefinite' to form the basis of a decree. The mere change of the fund or trust property from one state or form to another will not defeat the trust. The trust will attach to the property which is the product or substitute for the original thing, and the trust ceases only when the means of ascertainment fail. But when property is turned into money and mixed in a general mass of property of a like description the trust ceases. 2 Story's Eq., sec. 1259. To follow money into land, and impress the land with a trust, the money must be distinctly traced and clearly proved to have been invested in the land. It must be clear that the lands have been paid for out of the trust money. It is not sufficient to show the possession of moneys of the estate by the executor or administrator and the purchase of the lands by him. *Ferris v. Van Vechten*, 73 N. Y. 113.

According to these principles of law the plaintiffs have failed to make out a resulting trust as to all of the property, real and personal, least it be the real estate embraced in three deeds, hereafter mentioned. There is a failure to identify or trace any of the property of the estate of Shapley R. Phillips. The claim made for the plaintiffs is that the administrator had no means of his own, and he must therefore have used the assets of the estate in the purchase of personal and real property. But it must be remembered that during all this period of ten years, he transacted a large business of his own, and became indebted to the amount of sixty thousand dollars, besides the amount owing to the heirs of his father's estate. On this general and indefinite evidence it is just as fair to say that the property which he owned at his death is the product of money and property received from the defendant creditors as it is to say it is the product of the assets of his father's estate. The assets of the father's estate have not been traced to a single piece of property now on hand.

In some cases like that of *Harrison v. Smith*, 83 Mo. 210, where an agent or trustee mixes a known or defined amount of trust money with his own so that it cannot be distinguished, equity will follow the money by taking out the amount due the beneficiary. The present is no such a case. The creditors of Amos R. Phillips are entitled to some consideration as well as the distributees. The nearest approach to an identification of any of the property of the estate of Shapley R. Phillips is in three instances, where Amos became the purchaser of real estate at sales under executions issued upon judgments recovered by him as administrator, and deeds were made to him as follow: " One dated April 22, 1868, for ninety-seven acres of land, one dated April 21, 1869, for fifty acres of land, and the third dated March 27, 1873, for the interest of Presley Phillips in five or six hundred acres. These purchases aggregate the sum of eight thousand, four hundred and ninety-three dollars. If these lands were purchased by simply crediting the executions with the amount bid then, in the absence of further evidence, a trust would result in favor of the plaintiffs according to the interests which they represent by inheritance and purchase in the estate of Shapley R. Phillips. It is quite probable that these lands were paid for by Amos by simply crediting the executions, but the fact is not made to appear by this record, and without which proof there can be no resulting trust. As to all the other property specified in the petition, real and personal, there is a complete failure of proof.

Some other questions are discussed in the briefs but we deem it advisable not to consider them on the present state of the record, The judgment is reversed and the cause remanded. All concur.