45 603
76 338

THE GREEN-TREE BREWING COMPANY, Appellant, v.
C. J. DOLD *et al.*, Respondents.

### Kansas City Court of Appeals, May 25, 1891.

1. **Trust and Trustees:** RESULTING TRUSTS : CONVERSION : FOLLOW-
ING TRUST FUNDS. When a trustee, acting apparently within the
scope of his power, purchases land or personal property with trust
funds and takes the title in his own name without any declaration
of trust, a trust at once results in favor of the original *cestui que
trust*, and the purchaser becomes his trustee with respect to such
property ; so, too, a constructive trust arises where another's prop-
erty has been wrongfully appropriated and converted into a differ-
ent form ; and such new species of property may be followed not
only in the hands of the original wrongdoer, but as long as it
can be identified in whosoever's hands it may come with notice.

2. ———— : ———— : EVIDENCE : DOUBT. A resulting trust must not be
declared on doubtful evidence, or even upon a mere preponderance
of the evidence. There should be no room for a reasonable doubt,
and the evidence that the purchase was made with the trust funds
must be clear and unmistakable. The evidence in this case leaves
no doubt that the alleged purchase was not made with trust funds.

3. ———— : ———— : BOTTOMED ON VIOLATED DUTY. The ground of
principle on which equity raises trusts and affords relief against
persons acting in a fiduciary relation is that some duty has been
violated or some advantage taken. The evidence does not tend to
prove any facts which bring this case within this principle.

4. ———— : ———— : SECRET PARTNER. In this case it is *held*, that the
fact that the alleged purchase was made in the name of a secret
partner is of no consequence, since the evidence in its entirety
does not support plaintiff's theory.

*Appeal from the Jackson Circuit Court.*—HON. J. H.
SLOVER, Judge.

AFFIRMED.

*Chase & Powell*, for appellant.

(1) Defendant Dold was the agent of plaintiff,
employed at a salary of $3,000 per year to attend to the

business of plaintiff in Kansas City, and hence this case comes "within the operation of the principle that, in all cases where a person is actually or constructively an agent for another, all profits and advantages made by him in the business, beyond his ordinary compensation, is to be for the benefit of his employer." Story on Agency, sec. 211, p. 246; *Bartholomew v. Leech*, 7 Watts, 172, in which it is held that "the most open and disinterested dealing is required of a confidential agent while he consents to act as such, and there must be an unambiguous relinquishment of his agency before he can acquire an interest in the subject of it." "To leave a doubt of his position in this respect is to turn him into a trustee." "It is unnecessary to recur to authority for a principle so familiar and so accordant with common honesty." *Murdock v. Milner*, 84 Mo. 103; *Oldhams v. Jones*, 5 B. Mon. 467; *Schedda v. Sawyer*, 4 McLean, 181; *Morris v. Joseph*, 1 West Va. 256; *Grumley v. Webb*, 44 Mo. 445; *Parker v. Nickerson*, 112 Mass. 195; *Railroad v. Poor*, 59 Me. 277; *Railroad v. Hudson*, 19 Eng. L. & Eq. 365; Perry on Trusts, sec. 207; 2 Pom. Eq. Jurisprudence, sec. 1051; 1 Pom. Eq. Jurisprudence, sec. 442, pp. 462, 463; Perry on Trusts, secs. 206-7; Lewis on Trusts, 318; *Gaskell v. Chambers*, 26 Beav. 360; *Bent v. Priest*, 10 Mo. App. 543, 557, and cases cited; *Baker v. Railroad*, 86 Mo. 75-78; *Roberts v. Moseley*, 64 Mo. 507-511; *McAllen v. Woodcock*, 60 Mo. 174; *Lass v. Sternberg*, 50 Mo. 124: *Grumley v. Webb*, 48 Mo. 572; *Rea v. Capelin*, 47 Mo. 83; *Cook v. Mill Co.*, 6 Rep. 188.

*Kagy & Bremermann*, for respondents.

(1) Learned counsel assume that the purchase was made with the funds of appellant, which is not true. The facts show the contrary. In Pomeroy's Equity Jurisprudence, volume 2, section 1049, at the end of the

section, the rule is stated to be that "the evidence that the purchase was made with trust funds must, however, be clear and unmistakable." There should be no room for a reasonable doubt as to the facts relied upon to establish a trust. *Adams v. Burnes*, 96 Mo. 361; *Johnson v. Quarles*, 46 Mo. 424. Now, there is not a scintilla of evidence that this saloon was purchased with trust funds; but the evidence adduced by appellant shows unmistakably that it was not purchased with trust funds. ( 2 ) It is the practice of appellate courts in chancery cases to defer to some extent to the finding of the chancellor. *Chouteau v. Allen*, 70 Mo. 336; *Sayer v. Devore*, 99 Mo. 437; *Robertson v. Reed*, 38 Mo. App. 32; *Chapman v. McIllwrath*, 77 Mo. 38. Justice is a two-edged sword, and cuts both ways. *Non debet actori licere quod reo non permittitur.*

SMITH, P. J.—The plaintiff corporation brought its suit in equity, the object of which was to obtain a decree of title to the undivided one-half interest in a lease of certain premises and the saloon and fixtures situate thereon. The evidence tended, we think, to prove that, on the thirty-first day of January, 1888, defendant Dold was engaged in the service of plaintiff as its manager at Kansas City, Missouri, under a contract which was to expire by limitation on the first day of April, 1888. Plaintiff was a brewer, and had a depot for the sale of its products at Kansas City. On the twenty-seventh day of January, 1888, said Dold purchased from one Bodenhousen a saloon at number 1323 Grand Avenue, Kansas City, Missouri, the consideration being the assumption of an existing incumbrance for $1,750 and the payment of an unsecured debt of $1,000, which Bodenhousen owed plaintiff for beer sold to him by it. Among the things was a leasehold interest in the building at number 1323 Grand Avenue, with an unexpired term ending July 8, 1890. This interest was assigned to Dold with the consent of the landlord, he being a

personal friend of Dold. The lease contains a prohibition against assignment, except with the written consent of the landlord. The landlord never gave his consent to its assignment to plaintiff. On the thirty-first day of January, 1888, Dold and Kempf entered into copartnership, by the terms of which Kempf was to conduct in his name the saloon business at number 1323 Grand Avenue, the place bought by Dold, in the interest of both ; to manage said business without cost to said firm, and, as a consideration, for such management, Dold, who owned the lease to the whole building, allowed Kempf the use of the rooms over said saloon, for himself and family as a place of residence. On the same day Kempf and Dold, partners as J. C. Kempf, executed ten notes to plaintiff for $100 each, in settlement of the debt of Bodenhousen to plaintiff, which were accepted by appellant, and subsequently paid to it by Kempf. Thus matters stood until February 16, 1888, when Kempf made settlement with the holders of the incumbrances of $1,750. To make this settlement, Kempf, through Dold, borrowed from plaintiff $500. He received its check signed by Dold as its manager. This loan was reported to the plaintiff. Dold had authority to thus loan money to persons selling its beer. Kempf sold appellant's beer. The money was subsequently repaid. The property sold by Bodenhousen to Dold, exclusive of the leasehold, was worth something like $100 ; with leasehold, perhaps, $1,500. Dold gave none of his time to this business. Kempf had sole charge. Kempf paid Dold $435 for a half interest, all of which Dold expended for licenses for the firm, except something over $100, and subsequently received $40 or $50, and a note for $375 for supposed profits which were never earned, and the note was not paid. Bodenhousen was wholly insolvent, and but for this transaction plaintiff would have lost its entire claim. Plaintiff was not engaged in the business of buying saloons

or retailing beer. It manufactured and sold at whole-
sale only. The plaintiff was advised by the weekly
statement of the transaction of its business by Dold ;
that the notes of Kempf had been taken in discharge of
the indebtedness of Bodenhousen to it. After the plain-
tiff had been made acquainted with all the facts nar-
rated in its petition in respect to the acquisition of the
lease and the saloon by Dold, and the copartnership
transactions between Dold and Kempf, it accepted pay-
ment from Kempf, for Dold and Kempf, of four or
more of the notes given by Kempf to it. The court
found the issues for the defendant, and dismissed the
plaintiff's petition. The plaintiff appealed.

The question we have to determine is, whether,
upon the evidence, the court erred in its finding for
the defendants. The principle is elementry that, when
a trustee or other person in a fiduciary position, acting
apparently within the scope of his power, *i. e.*, having
authority by virtue of its trust, or other fiduciary rela-
tion, to do what he does do, purchases land or other
personal property with trust funds, or funds in his
hands, impressed with the fiduciary character, and
takes the title to such property in his own name without
any declaration of a trust, a trust with respect to such
property at once results in favor of the original *cestui
que trust* or other beneficiary, the purchaser becoming
with respect to such property a trustee. So, too, it is
that a constructive trust arises where another's property
has been wrongfully appropriated and converted into a
different form. If one having money, or any kind of
property belonging to another in his hands, wrongfully
uses it for the purchase of property, taking the title in
his own name, or if a trustee or other fiduciary person
wrongfully converts the trust fund into different species
of property, taking to himself the title, or if an agent
or bailee wrongfully disposes of his principal's securi-
ties, and with the proceeds purchase another's securities
in his own name, in these and similar cases, equity

impresses constructive trust upon the new species of property, not only while in the hands of the original wrongdoer, but as long as it can be followed and identified in whosoever's hands it may come, excepting a *bona fide* purchaser for value without notice. And the court will enforce the constructive trust for the benefit of the beneficial owner. Pomeroy's Eq. Jur., secs. 422, 1051.

But do the facts of this case bring it within any of these principles? The rule is well settled that a resulting trust must not be declared upon doubtful evidence, or even upon a mere preponderance of evidence. There should be no room for a reasonable doubt as to the facts relied upon to establish the trust ( *Adams v. Burns*, 96 Mo. 361; *Johnson v. Quarles*, 46 Mo. 421); or as is said in Pomeroy's Equity Jurisprudence, section 1049, the "evidence that the purchase was made with the trust funds must, however, be clear and unmistakable." In this case the evidence leaves no doubt that neither the acquisition of the lease by Dold from Muehlschuster, nor the purchase of the bar and fixtures from Bodenhousen, was not made with any funds belonging to the plaintiffs. Dold acquired this property without using any funds in his hands belonging to plaintiff. The consideration of the sale of this property by Bodenhousen to Dold was the assumption by the latter with Kempf of the payment of $1,000, due by the former to plaintiff, and $750, secured by a mortgage on the bar and fixtures, which was due Mrs. Miller. The lease, too, was assigned to Dold. It is true Dold used $500 of the plaintiff's money in part extinguishment of Mrs. Miller's mortgage lien, but this was repaid in a short time. This use of the plaintiff's money is the only circumstance or fact in the entire record which lends the least support to the plaintiff's theory of the case. But in view of the other facts in the case, was this such a wrongful appropriation and conversion of the plaintiff's

funds by Dold as to impress a constructive trust upon the lease, or bar and fixtures ?

It must be remembered that Bodenhousen was insolvent, and that he was indebted to the plaintiff in the sum of $1,000. These purchases by Dold and his subsequent transactions with Kempf were undoubtedly made and entered into by Dold for the primary purpose of securing the Bodenhousen debt, and but for which it would have been lost. It seems that the chief motive which actuated Dold in buying out Bodenhousen was to secure the debt of the plaintiff. In furtherance of this object it cannot be seen that the temporary use of the $500 was incompatible with the relations he sustained to the plaintiff. As the result turned out, it appears to have been a judicious and business-like use of the plaintiff's funds. An insolvent debt was thereby made solvent. Plaintiff was not engaged in buying and selling saloons, but in the manufacture and sale of beer. Dold's duty, in part, was to sell the plaintiff's beer, and to collect the money on account of such sales. By the purchase of Bodenhousen, Dold was enabled to continue in business a saloon that handled plaintiff's beer, and to collect a worthless debt. Again, Dold, it appears, was invested by virtue of his relations to plaintiff with authority to make loans to saloon keepers who were patrons of the plaintiff, in order to keep them going, when, in his judgment, it was for the interest of the plaintiff that he should do so. It is quite difficult to understand why the loan of the $500 to Kempf, under the peculiar circumstances of this case, was not within Dold's authority. We can discover, in this transaction, no abuse of the trust that was reposed in him by the plaintiff, under his employment.

The ground of principle upon which equity raises trusts, and affords relief against persons acting in a fiduciary relation, is that some duty has been violated or some advantage taken. The evidence does not tend to prove any facts which bring this case within this

principle. Dold, while in the plaintiff's employment gave no attention to the saloon. His partner, Kempf, attended to that business. Dold individually took the risks incident to this venture. If it succeeded plaintiff would be benefited, and if it failed Dold, and not plaintiff, would be the loser.

It is contended for the plaintiff, that the partnership between Dold and Kempf, being a secret one, that this circumstance shows that Dold was acting in bad faith towards the plaintiff. The reason Dold assigns for this secrecy was that, if other saloons had been made aware of the fact that he had become interested in the Kempf saloon, that this would have injured the plaintiff's trade with others engaged in the saloon business. Besides there is some evidence tending to show that the plaintiff was not entirely unadvised as to Dold's connection with the Kempf saloon business. But whether the secret character of the partnership was known to plaintiff or not, we think is of no consequence, since the evidence when considered in its entirety would not justify a different finding from that made by the learned circuit judge who tried the case. It clearly appears that the plaintiff with notice of Dold's connection with the saloon transaction received nearly all the benefits and advantages arising therefrom, and ought not, for that reason, now to be heard to complain thereof.

The decree of the circuit court must be affirmed. All concur.