THE DEMING COMPANY, Respondent, v. ALBERT WEBB, Assignee of DETRICK SUPPLY COMPANY, Appellant.

St. Louis Court of Appeals, November 1, 1898.

1. **Assignee**: TRUSTEE: BENEFICIARY. When the goods were received on consignment the relation of trustee and beneficiary subsisted between the consignor and consignee, and this relation when once established could not be changed to that of ordinary debtor and creditor except by the mutual consent of the consignor and consignee, or by a compliance with the terms of the contract by the consignee.

2. **Same**: TRUST FUND: CONVERSION. Where the assigned assets of an insolvent concern have been swelled by the conversion of trust funds the trust may be impressed upon the general assets of the concern and it, or its assignee or trustee, be compelled to pay the trust fund from the general assets as a preferred claim.

*Appeal from the St. Louis City Circuit Court.*—HON. JOHN A. TALTY, Judge.

AFFIRMED.

A. L. ABBOTT for appellee.

The relation that existed under the contract was that of trustee and *cestui que trust* and not debtor and creditor. Until the actual delivery of the note mentioned in the contract, the trust continued, and the Deming Company was entitled to follow the proceeds of the sales into the hands of the assignee. Berry v. Allen, 59 Ill. App. 149; Habler v. Luttgin, 37 N. Y. Sup. 794, 2 App. Div. 390; Moore v. Hildebrand, 37 Hun. (N. Y.) 491; Norton v. Milick, 66 N. W. Rep. 780; Bayliss v. Davis, 47 Iowa, 340; Eldridge v. Benson, 7 Cush. (Mass.) 485; Harrison v. Smith, 83 Mo. 210; Green v. Conrad, 114 Mo. 651, 664; Cody v. Vaughan, 53 Mo. App. 169; Green Tree Brewing Co. v. Dale, 45 Mo. App. 603; Patterson v. Booth, 103 Mo. 402. The voluntary allowance by the assignee was a nullity. The petition presented showed a cause of action, purely equitable in its character, over which the assignee had no jurisdiction. The matter was not presented as a claim for allowance. Where it is sought to charge or follow property with a trust, a proceeding in equity is the only proper remedy. Sherwood v. Saxton, 69 Mo. 78. The judgment being a nullity, the appellee lost no rights by failing to take an appeal. The demand upon an assignee for payment of a trust fund, and a suit in equity to charge the funds in the hands of the trustee, with a trust, are not inconsistent acts. Stuller v. Coates, 88 Mo. 514, 522. An assignee has no judicial powers, and can not render a judgment, which is predicated upon the exercise of judicial powers, nor can an assignee, having no judicial powers, take cognizance of matters of equity. Const., art. 6, sec. 1. The abstract of record shows that the moneys collected from the sales were mingled with the other assets of the Detrick Supply Company.

A. N. EDWARDS and W. PALMER CLARKSON for appellant.

In order to constitute a trust fund there must be a right to a specific fund (see Stoller v. Coates, 88 Mo. 514). Under the agreement the proceeds of a sale were not to be remitted to plaintiff or held for it, but defendant was to pay to plaintiff at a future day, by note or acceptance, a fixed price irrespective of the price at which the goods were sold. A debt and not a trust was created upon a sale being made. Thornton v. Cook, 97 Ala. 630. The allowance of a claim by an assignee is a judgment, and after such allowance no action can be founded on the original claim, which is thereby merged. The objection of any evidence under the pleadings and the motion in arrest, because no cause of action is stated, should have been sustained because the petition is founded, not upon the judgment, but upon the cause of action which has been merged in the judgment. Slate Co. v. Conner Co., 62 Mo. App. 569 (574, 575); Kendrick v. McKee, 60 Mo. App. 22. The judgment of the assignee was not appealed from and is a bar to this suit. R. S. of Mo., sec. 443. Where the issues have been once adjudicated there is no cause of action. Givens v. Thompson, 110 Mo. 432. Plaintiff now contends that the assignee had no power to allow the preference it requested him to allow. In Luthev v. Saylor, 8 Mo. App. 424, it was held that an assignee must allow as a preferred claim the wages of an employee. Having the power to adjudge priority to a trust imposed on the assets by statute in favor of the laborer, it would seem that he has like powers to pass on plaintiff's claim. It was not shown by plaintiff that the assets in defendant's hands were swelled or increased by reason of the sales alleged in the petition.

Unless this is done there can be no recovery.    Phillips
v. Overfield, 100 Mo. 466 (474).

BLAND, J.—On the sixteenth of February, 1894,
the respondent an Ohio corporation, engaged in manu-
facturing pumps and pump handles, made a contract
with the Albert Webb Supply Company, a Missouri
corporation, the material parts of which are as fol-
lows:

"That for and in consideration of the covenants
and agreements herein contained to be well and faith-
fully performed by the party of the second part, the
party of the first part hereby appoints said second
party sole agent for the sale of their pumps, pump
cylinders and fixtures in the city of St. Louis, Mo.,
for term of three years from this date.

"*First.*    The party of the first part agrees to keep
in stock on consignment at St. Louis, Mo., with said
second party a line of pumps and pump cylinders suit-
able for that market, such as said second party may
order, the net amount of said consigned stock not to
exceed $3,000 at any time, unless the said first party
desires to increase said consigned stock.    The party of
the second part hereby agrees to start in business with
a paid in capital of not less than $2,500. .

"*Third.*    The first party agrees to consign a stock
as above provided in item first and to make The Albert
Webb Supply Company the bottom prices generally
made by first party to jobbers, which prices are for the
year 1894 fixed by the discount sheet of said Deming
Company hereto attached, at which prices The Albert
Webb Supply Company are to settle for the goods.
Report of sales is to be made at the first of each month
for the preceding month, and the second party is to
deliver to said first party their note or acceptance at
ninety days from the first of each month.

"*Fifth.* The party of the second part agrees to keep the consigned stock of goods referred to in this contract insured in some first-class insurance company satisfactory to the first party, said insurance to be made payable to said first party and policies to be delivered to first party.

"*Ninth.* Said second party agrees to make a full report of stock on hand and condition of same at any time said first party may ask for same, and said first party is to have the right and privilege of invoicing said stock at any time it may wish, and said second party, upon such invoice, shall account to said first party for such goods as may not be shown on hand or otherwise accounted or settled for.

"*Tenth.* Said second party herewith agrees to properly care for and store the goods for the first party without expense to said first party.

"*Eleventh.* Said second party agrees to make to the president or secretary of the Deming Company at any time when requested by them, a true statement as to their financial standing, and it is hereby expressly understood and agreed that should the Deming Company at any time become dissatisfied with the financial standing of the party of the second part, or should second party at any time fail to pay any of the notes herein provided for upon maturity, first party shall have the right to terminate this agreement and withdraw said consigned stock."

It was admitted on the trial that on the thirteenth day of May, 1895, The Detrick Supply Company was, by consent, substituted in this contract for The Albert Webb Supply Company. In performance of its contract the respondent from time to time consigned goods of its making to The Detrick Supply Company. On February 24, 1896, The Detrick Supply Company executed a chattel deed of trust to secure its bank, and then

executed a general deed of assignment to Albert Webb for the benefit of its other creditors. The trustee named in the deed of trust took possession of the merchandise and accounts described in the deed, from which he realized enough to pay the beneficiary bank the amount due it, and turned over to Webb, the general assignee, about $2,000 in cash, together with the remaining uncollected accounts. Previous to the assignment and in the month of February, 1896, The Detrick Supply Company collected $251 on account of sales of goods consigned to it by the respondent, for which the Detrick Company rendered no account, nor made any settlement with the respondent, but mingled this collection with its general assets. The trustee in the chattel deed of trust collected $150 on account of sales of goods consigned by respondent to the Detrick Company, which he mingled with the other trust funds in his hands. The assignee, Webb, made a like collection of $15 or $20 which he mingled with the other assigned funds in his possession. Other unreported collections swelled the total to $656.44. In the course of the administration of the assets of the assigned estate the respondent presented to Webb, the assignee, for collection a claim of $1,055.97 for merchandise sold, telegrams, notes and interest, and also a separate claim of $656.44 for consigned goods sold by The Detrick Supply Company, and for which it had rendered no account, nor made any settlement, and asked that the latter sum be allowed as a preferred claim, claiming that the assignee had and held this sum in his hands as its trustee. The assignee on the claim of $1,055.97 allowed the sum of $1,712.41. In other words, he consolidated the two claims, ignored the claim of a preference as to the $656.44, and allowed it as an ordinary claim. Respondent did not appeal from this allowance. Afterward respondent received from

the assignee Webb a twenty per cent dividend on its allowance of $1,712.41, but with the distinct understanding that its claim of preference should be in no wise prejudiced by its reception of the dividend. The circuit court on the trial found for the respondent and allowed its claim of $656.44, less the payment of the twenty per cent made on distribution as a preferred claim, and ordered the assignee to pay the same out of any funds in his hands or that might come into his hands as assignee. After an unavailing motion for new trial, Webb, the assignee, took and perfected his appeal to this court.

Three questions for solution are presented by the record in this case, viz.: *First.* Is the respondent concluded by the ruling of the assignee that his claim is not entitled to a preference and by its allowance as a general debt against the assigned estate? *Second.* Under the contract were the several collections of cash for sales of the consigned goods trust funds being unreported and no notes or acceptances having been given for them; and, *third*, if trust funds can they, after having been mingled with the general assets of the estate by the various parties through whose hands they passed and their identity thus destroyed, be charged against the general assets of the estate as a preferred claim, because these assets were increased by these funds.

QUESTIONS for solution.

I. It has been repeatedly held both by the supreme court and by the courts of appeal, that where an assignee passed upon a claim and allowed it, the question involved therein becomes *res judicata;* that his action is final and has all the force and effect of a judgment. Effright v. Kauffman, 90 Mo. 25; Nanson v. Jacob, 93 Mo. 331; Roan v. Winn, 93 Mo. loc. cit. 512; O'Brien Boiler Works v. Haydock, 59 Mo. App. 653; Kendrick v. Guthrie Mfg. Co., 60 Mo. App. 22; Hayden

Slate Co. v. National Cornice & Iron Co., 62 Mo. App. 569. The claim of respondent having been allowed by the assignee, he is concluded by that action, unless there is some inherent defect in the proceedings taken by the assignee which renders his allowance of this claim void. The claim as presented to the assignee showed plainly on its face that it was an equitable claim, and asked that it be allowed as such and be given preference over the general claims against the estate. The assignee disregarded or rejected the equities of the claim, consolidated it with the respondent's general claim, and allowed both as one claim against the estate. The claim presented by respondent was not a general claim against the estate of the assignor, but was a claim of right to pursue a trust fund which had been mingled with the general assets of the estate, and sought to charge these assets with the payment of this trust fund. This claim was essentially an equitable one and cognizable only in a tribunal having chancery jurisdiction. In Stoller v. Coates, 88 Mo. loc. cit. 522, there is an intimation that a claim might be proved up before a general assignee as for a special trust fund. The power of an assignee to allow such a claim was not before the court in that case, and it is not authority for the assumption. Section 442, Revised Statutes 1889, makes it the duty of the assignee to "adjust and allow demands against the estate and effects of the assignor." Section 191, Revised Statutes 1889, confers upon probate courts "the jurisdiction to hear and determine all suits and other proceedings instituted against executors and administrators upon *any demand* against the estate of the testator or intestate. \* \* \* This action is as broad as section 442, *supra*, granting powers to assignees to adjust and allow claims against the assignor, and the tribunal, the probate court, is superior in dignity and possessed of greater

CLAIM of right.

judicial functions than a mere assignee (if it can be said that he is possessed of such functions at all), yet it has been repeatedly held that the probate courts of this state are not possessed of any equitable jurisdiction. Pres. Church v. McElhinney, 61 Mo. 540; Butler v. Lawson, 72 Mo. 227; Patterson v. Booth, 103 Mo. 402; Est. of Glover v. Shepley, 127 Mo. 153. Applying the reason of these decided cases to section 442, *supra*, we answer the query in the negative, and hold that the allowance of the equitable claim by the assignee as a general claim was without authority beyond his jurisdiction and null and void. The reception of the twenty per cent dividend by respondent, with the express agreement with the assignee that his equities should not be prejudiced or affected thereby, did not estop him from prosecuting this suit.

II. Were the funds trust funds? The third clause of the contract contains this stipulation or agreement: "Report of sales is to be made at the first of each month for the preceding month, and the second party (The Detrick Supply Company) is to deliver to said first party (respondent) their note or acceptances at ninety days from the first of each month." It is admitted that the funds (claimed to be trust funds), were the proceeds of sales made by the Detrick Supply Company of goods consigned to it by the respondent, and that none of these sales were reported, nor were notes or acceptances given therefor. As to these goods it is conceded that the relation of trustee and beneficiary subsisted between the consignor and consignee, when the goods were received on consignment. This relation once established could not be changed to that of ordinary debtor and creditor, except by the mutual consent of the consignor and consignee, or by a compliance with the terms of the contract by the consignee,

that is by its report of these sales and the delivery of its notes or acceptances for their several amounts, neither of which was done, and we hold that the funds are trust funds.

III.   Can these funds having been mingled with the general assets of the consigned estate be pursued and charged against the general assets?   Where the assigned assets of an insolvent concern have been swelled (as was evidently done in this case) by the conversion of trust funds, it has been repeatedly held by the supreme court that the trust may be impressed upon the general assets of the concern, and it, or its assignee or trustee, be compelled to pay the trust fund from the general assets as a preferred claim.   Harrison v. Smith, 83 Mo. 210; Green v. Conrad, 114 Mo. 651; Patterson v. Booth, 103 Mo. 402. The same ruling has also been made by the court of appeals in Green Tree Brewing Co. v. Dodd, 45 Mo. App. 603; Cody v. Vaughn, 53 Mo. App. 169; Paul v. Draper, 73 Mo. App. 566.   A contrary ruling would result in allowing a careless, indifferent or fraudulent trustee to increase the assets of his estate by the wrongful conversion of another's goods, of which he had gotten possession by reason of the confidence of his victim.   No court of equity can afford to tolerate or uphold such a fraudulent transaction.   The judgment of the lower court is affirmed.   All concur.