HARRISON V. SMITH, *Assignee, Appellant.*

1. **Trustee and Cestui Que Trust: RELATION OF BANK.** A bank in this state undertook to effect a loan of money on real estate security here for plaintiff who resided in the state of New York and kept a bank account there, and the plaintiff sent the bank here a check for the sum to be loaned, payable to it, which was to be paid to the borrower when the terms of the loan as to delivery of note and execution of a deed of trust were completed. The bank credited the amount received to plaintiff on investment account and sent the check to its correspondent in New York by whom it was collected and credited to the bank here, and in the meantime the latter led plaintiff to believe that the loan had been perfected, and subsequently made an assignment for benefit of its creditors. *Held:* (1) That the lower court rightly found that the relation of trustee and *cestui que trust*, and not that of depositor and depositary, existed between the bank and plaintiff; and (2) that the bank was liable for wrongfully mixing the proceeds of the draft with its own money.

2. **Trustee intermingling Trust Money with his own.** When a trustee mixes trust money with his own so that it cannot be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out the amount due the *cestui que trust*. *Mills v. Post,* 76 Mo. 426, not adhered to.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*W. H. Watts* and *Henry Smith* for appellant.

*First.* The relation of respondent Harrison to the Missouri Valley Bank was, throughout the entire period of thirteen months, which covered the transaction in question, never anything but that of creditor to debtor. The fact that Harrison deposited his money in the Missouri Valley Bank, with the view of loaning the same through that bank on real estate in Kansas City, does not in the least change the nature of the deposit. *Second.* Neither the fund in question, nor any proceeds therefrom,

ever formed any part of the assets assigned to appellant Smith, or ever came into his hands in any condition whatever. *Third.* If the court should find that the money in question was a trust fund and did in effect come into the hands of Smith, assignee, Harrison would yet be without the remedy which he seeks by this action, for the reason that his money had been, prior to the assignment, as he admits in his petition, "mingled with the cash and other assets of said bank," and was so mixed and mingled with such assets as to be incapable of separation or identification. In support of the above propositions, appellant refers to the following authorities:

2 Story Eq. Jur., §§ 1210, 1258, 1259, 1260, 1264; Story's Agency, §§ 229, 231; 1 Perry on Trusts, § 463; 3 Sugden on Vendors, 270, 273; *Pennell v. Deffell*, 23 Eng. L. & E. 460; 4 DeG., McN. & G. 388; *Knatchbull v Hallett*, L. R. 13 Chan. Div. 696; *Taylor v. Plummer*, 3 Maule & S. 562; *Hobbs v. Hapgood*, 14 N. B. Reg. 495; *Brocchus v. Morgan*, 5 Cent. Law Journal 53; *Kipp v. Bank*, 10 Johns. 63; *F. & M. Nat. Bank v. King*, 57 Pa. St. 202; *Thompson v. Perkins*, 3 Mason 232; *Goodell v. Buck*, 67 Maine 514; *Steamboat Co. v. Locke*, 73 Maine 370; *U. S. v. Waterborough*, Davies 154; *Cook v. Tullis*, 18 Wall. 332; *Illinois T. & S. Bank v. First Nat.*, 16 Rep. 261; *Buck v. Ashbrook*, 59 Mo. 200–203; *Mills v. Post*, 76 Mo. 226; 7 Mo. App. 519.

*Gage, Ladd & Small* for respondent.

(1) The appellant's first position, that Harrison was an ordinary depositor with the bank, and consequently only had the rights of an ordinary creditor, cannot be maintained as a matter of fact. (2) Under the modern doctrines of equity, or rather the modern application of old and well-established equity doctrines, the plaintiff is entitled to the relief granted him by the decree of the circuit court. It is the combination of two well-known equity doctrines that accomplishes the result in such cases. One is that "so long

as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust;" the other is "that if a man mixes trust funds with his own the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own." *Frith v. Cortland*, 2 Hem. and M. 417–420; *National Bk. v. Ins. Co.*, 104 U. S. 70; *Mechanics' Bank v. King*, 57 Pa. St. 202; *Knatchbull v. Hallett*, 13 Ch. D. 696; *Butler v. Lawson*, 72 Mo. 227. (3) The fact that Harrison's draft was drawn on New York, and sent there for credit by the bank, is not material. Substantially the latter had the money of plaintiff in its vaults when it sent the draft to New York.

NORTON, J.—The Missouri Valley Bank was a banking corporation doing business in Kansas City, and on the 17th day of February, 1881, it made a general assignment of its assets to defendant Smith for the benefit of creditors; and this suit was instituted against him for the purpose of impressing the assets in his hands with a trust, and, as a foundation for the claim, it is averred substantially in the petition that the Missouri Valley Bank was acting as the agent of plaintiff, who lived in the state of New York, in effecting loans of plaintiff's money on real estate security; that plaintiff, on being advised by the bank that it could effect a loan of $4,500 to Lycurgus and Elizabeth Raitsback, secured by deed of trust, sent to the bank in the last of December, 1880, or first of January, 1881, the sum of $4,500, not as a deposit, but as a special trust for effecting said loan, and which was to be held by said bank only for delivery to the said Raitsbacks when they executed and delivered a note for the same, secured by a recorded deed of trust; that said sum of money, instead of being applied by the bank, as directed and agreed by and between the bank and plaintiff, was wrongfully mingled with the cash and other assets of the bank which came to the hands of defendant Smith under the assignment. The prayer of the petitioner is that

said sum may be decreed to be a lien on said assets, that it be paid out of said assets before the same or any part thereof is used for the benefit of the general creditors.

The defendant set up in his answer substantially that plaintiff was simply a depositor of the bank and that the relation between the plaintiff and the bank was simply and only that of debtor and creditor; it also denied that the bank contracted with the plaintiff as alleged in the petition; denied that the money claimed by him, or any part thereof, was wrongfully mingled with the cash and other assets of the bank, and as such came to the hands of defendant. It is then averred that when the money for which the suit is prosecuted was paid into said bank the same was not kept in a package separate and distinct from other funds, but that the same was mingled with its other money and effects, and was again, and long prior to said assignment, along with other money and effects, paid out by said bank in the usual course of its business, and that no part of said money or its proceeds remained in said bank or formed part of its assets or ever came to defendant's hands. In the trial of the issues involved, the trial court found in favor of plaintiff the sum of $3,150, and decreed its payment by defendant in conformity with the prayer of the petition, and from this judgment and decree the defendant has appealed.

The first question arising on the appeal is: Was the relation between plaintiff and the Missouri Valley Bank, as to the money sued for, that of principal and agent, trustee and *cestui que trust*, or simply that of depositor and depositary? The trial court found this relation to be that of trustee and *cestui que trust*, and this finding, we think, is abundantly sustained by the evidence. As the evidence upon this subject is epistolary and embraced in a lengthy correspondence, we omit it in consequence of its voluminousness, contenting ourselves with stating its substance. It appears from it that the plaintiff was a resident of Troy in the state of New York, and that the bank, in the latter part of the year 1879,

through its cashier, wrote him a letter stating that loans of money could be effected in Kansas City on real estate security treble the value of the amount loaned; proposing to act for and on behalf of plaintiff in effecting such loans; that when loans were applied for the bank would write to plaintiff, naming the amount required, with description and value of property proposed to be given as security, and the plaintiff would send the amount required in a check payable to the Missouri Valley Bank to be handed over to the borrower when the terms of the loan, as to execution and delivery of note and deed of trust to secure the same, were completed. It appears that in the latter part of the year 1880 plaintiff was informed by letter from the bank that Mrs. Raitsback and her husband were desiring to borrow $4,500 on five years' time, at eight per cent. interest, and that if he would propose to make the loan the bank would secure it for him; that the loan was a choice one, on the best residence property, and to responsible parties. The correspondence on the subject of this loan culminated in plaintiff sending his check for the required amount on parties in New York to be loaned to the Raitsbacks on the terms proposed. The correspondence in reference to this loan continued till the 11th of February, 1881, six days before the bank broke and made an assignment to defendant Smith. We cannot see how, on this evidence, the court could have found otherwise than it did, viz.. that as to the money the relation of plaintiff and the bank was that of trustee and *cestui que trust*. The fact that the bank credited the amount received to plaintiff (on investment account) could not, and did not, change this relationship and create simply that of debtor and creditor. Mr. Harrison, the plaintiff, as the evidence shows, resided in the distant state of New York and kept his accounts as depositor in his home banks, and there is no evidence in the case tending to show that it was his intention to withdraw such deposits and place them as a depositor in the Missouri Valley Bank at Kansas City.

The next question arising on the appeal is: Did the bank wrongfully mingle and intermix the proceeds of this draft with its own money and assets? The trial court found that it did, and this finding is, also, we think, fully sustained by the evidence, which shows that the bank, instead of being a faithful agent and true to the trust confided to it in perfecting the Raitsback loan, sent the same to its correspondent, the Continental Bank of New York, for collection and credit, by which it was collected and credited, in the meantime leading plaintiff to believe by its correspondence, continued down to a period of time only six days before the assignment, that the loan had been perfected.

The only remaining question is: Whether under the above state of facts, plaintiff has an equitable right to have his demand first paid out of the assets in defendant's hands, and before the same are paid out to the general creditors of the bank? It is insisted on the part of appellant that plaintiff has no such right, because it was not shown by the evidence into which particular asset of the bank the fund went; that the money could not be followed because it had no "ear-mark" and that the proceeds of the draft were so intermingled with other assets as not to be distinguishable; that the trust money had all been paid out by the bank before the assignment in its usual course of business. In support of the last proposition it is claimed that the conclusion therein stated "that the trust money had all been paid out by the bank," had been arrived at by the application of the rule laid down in 1 Perry on Trusts, section 463, where it is said: "The rule to be applied in such cases is stated in *Pennell v. Deffell*, as follows: 'The checks are to be applied to the earliest items of deposit, whether of the trust fund or the trustee's own money, and such earlier items will be reduced *pro tanto.*'"

It is a sufficient disposition of this authority to say that in the recent case of *Knatchbull v. Hallett*, 13 Ch. D. 696, decided in 1879, the rule laid down in *Pennell v. Def-*

*fell* was condemned and held not to be applicable in a case like the one before us.   In the case above referred to the right of *cestui que trust* to follow the trust fund when it has been mingled with the private funds of the trustee is elaborately discussed, and the doctrine distinctly announced that when the trustee mixes the trust money with his own, so that it could not be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out the amount due the *cestui que trust*, and the doctrine that you cannot follow trust money mixed with other money in an undistinguishable mass, because of its having no "ear-mark," must be taken as subject to the application of the above rule.   The same subject has been recently discussed in an exhaustive and elaborate opinion of the Supreme Court of the United States in the case of *National Bank v. Insurance Co.*, 104 U. S., p. 54, decided in 1881, where it is held that as long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust, and if a man mixes trust funds with his own money the whole will be treated as trust property, except so far as he may be able to distinguish what is his.

So this court, in *Pomeroy v. Benton*, 57 Mo. 531, approvingly quoted from 1 Story Eq., sec. 468, the following : "An agent is bound to keep the property of the principal separate from his own ; if he mixes it up with his own the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part. In other words, the agent is put to the necessity of showing clearly what part of the property belongs to him ; and so far as he is unable to do this, it is treated as the property of his principal.  Courts of equity do not in these cases proceed upon the notion that strict justice is done between the parties, but upon the ground that it is

the only justice that can be done; and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal." See also *Jewett v. Dringer*, 8 Central·Law Journal, 88-9. We have been cited by counsel for appellant to a number of authorities maintaining the doctrine that trust money intermingled with other money cannot be followed by the *cestui que trust*, because money has no ear-mark, and among others is the case of *Mills v. Post*, 76 Mo. 426, to which we are unwilling further to adhere, in so far as it recognizes the principle that trust money mixed with other money cannot be followed because it cannot be distinguished by reason of its having no ear mark, believing the rule announced in the cases above cited by us to be more in consonance with sound reason and more productive of just results.

If A, holding $1,000 in coin in trust for B, place it in a bag or box and mingle with it $1,000 in coin of his own, whereby the particular $1,000 of coin of trust money cannot be distinguished from the $1,000 of private money, it is, we think, more consonant with equity for the chancellor to say he will put his hand in the bag and take from it and restore to B his $1,000 of trust money, than for him to say because of the fact that the money is not ear-marked and the fact that because of A's wrongful act in thus mixing the funds one cannot be distinguished from the other, that B can take nothing in virtue of the trust, but must take his chances with the general creditors of A. Applying this principle to the case before us, where the trust money of plaintiff was mingled wrongfully, if not fraudulently, with funds of the bank and went into its business operations a very short time previous to the assignment of its effects, and while not clearly traceable to any particular asset of the bank, the fact remains that it went into its assets and to the extent of $4,500 increased and swelled the volume of its assets, and it logically follows from such application of the principle that plaintiff was entitled to the relief prayed for and

that the judgment of the court granting it ought to be affirmed, which is accordingly done with the concurrence of the other judges.