T. K. PAUL, Appellant, v. C. C. DRAPER, Respondent.

St. Louis Court of Appeals, February 15, 1898.

Impressed Trust: LIABILITY OF ASSETS OF INSOLVENT BANK FOR TRUST DEPOSIT. The receipt by a bank of a trust fund, with the knowledge of its trust character, impressed the assets of the bank, which were increased to that extent, with a trust for the payment of such fund.

*Appeal from the Webster Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED AND REMANDED (*with directions*); Judge BLAND concurring, Judge BIGGS dissenting.

CERTIFIED TO SUPREME COURT.

*Wm. O. Mead* and *T. T. Loy* for appellant.

The pension money was a trust fund in the hands of plaintiff for the use of his wards, and he had no power to part with the title to it without the sanction of the probate court. It was a trust fund in the hands of the bank receiving it, as it did, with notice of its trust character; and the fact that it was mingled with the funds of the bank does not change its character. Having passed to the assignee with the assets of the bank, which it went to swell, it is impressed with such trust, and plaintiff should have it restored to him out of such assets in preference to general creditors. *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates,* 88 Mo. 514; *Bank v. Sanford,* 62 Mo. App. 394; *Cart Co. v. Stephens,* 32 *Id.* 341; *Snodgrass v. Moore,* 30 *Id.* 232; *School Dist. v. King,* 45 N. W. Rep. (Iowa) 908; *Roca v. Byrne,* 39 N. E. Rep. (N. Y.) 812; *Cody v. Bank,* 65 N. W. Rep. (Neb.) 906; *Bank v. Ins. Co.*, 104 U. S.

54; *Francis v. Evans*, 33 N. W. Rep. 93; *Bank v. Gas Co.*, 30 *Id.* 440; *McLeod v. Evans*, 28 *Id.* 173; *Baker v. Bank*, 2 N. E. Rep. 452.

*Nixon & Wallace* for respondent.

The liability of executor or guardian for money deposited is that of ordinary bailee for hire. If they exercise ordinary care in depositing trust funds they are not liable for their loss. *State ex rel. v. Powell*, 67 Mo. 397; *State ex rel. v. Moore*, 74 *Id.* 417; *Powell v. Hart*, 108 *Id.* 507; *Atterberry v. McDuffie*, 31 Mo. App. 603; *Dowergoople v. Gamble*, 68 Md. 156; *Barkin v. Barkin*, 4 Laws (N. Y.), 94; *Johnson's Appeals*, 115 Pa. St. 129.

The deposit of trust funds does not make the banker trustee. *State ex rel. v. Powell, supra; State ex rel. v. Moore, supra; Dickerson v. Coates*, 79 Mo. 252, 257.

BOND, J.—The petition herein seeks to establish a trust against defendant as assignee of an insolvent bank for certain money alleged to have been deposited by plaintiff as guardian of two minors with said bank for collection. The answer admitted defendant to be the assignee of the creditors of the bank, and denied the other allegations of the petition. The facts are that on the eleventh day of April, 1896, plaintiff deposited with defendant's assignor a pension check for $1,084.53, payable to himself as guardian, receiving therefor a duplicate slip signed by the officers of the bank, showing the deposit of the pension check by plaintiff as guardian. The bank, however, at the same time made an entry on its books accrediting deposit to the plaintiff individually. The bank collected said pension check and paid out $179.50 thereof

upon the checks drawn on it by plaintiff in his individual capacity. It is also sufficiently clear from the testimony that the managing officers of the bank were informed that the pension check represented the money of the two wards of plaintiff and was held by him as their guardian, and that it should be entered in the books in the name of their guardian. The bank assigned its assets to the defendant on May 1, 1896, for the benefit of its creditors. There was a finding for defendant, from which this appeal is taken.

The only question presented by the record is whether under the above facts the assets in the hands

of the defendant can be charged with a

IMPRESSED trust: trust for the unpaid portion of the sum
liability of assets
of insolvent bank collected by the bank on the pension
for trust deposit.

check deposited with it. Under the facts in this case, as we find them to be, the question must be answered in the affirmative. The bank receiving the check for collection for plaintiff as guardian could not transfer to its assignee for creditors any title to the proceeds which it did not itself possess. The bank could not have used such proceeds in the payment of its demands against the plaintiff in his individual capacity, as between him and the bank the relationship of trust was full and complete, and the bank could not denude itself of this obligation by applying the fund to the payment of its claims against the depositor personally. It might have paid his checks to third parties out of the fund, but it was disabled from converting any part of the fund to the payment of his personal debt to it. *Ihl v. Bank*, 26 Mo. App. 129. If the bank could not pay its own debt out of the fund in question, it necessarily results that it could not apply it to the payment of debts due from it to its general creditors, nor to the assignee representing them, for he simply succeeds to the rights of his

assignor, the bank.   Moreover the deposit in question was evidenced by a *receipt showing its trust character*, and we find the fact to be that the receipt was so written by the bank's president or cashier, and that they knew the particular *cestuis que trust* to whom it belonged and received it for collection for their benefit.   Under these circumstances there can be no doubt as to the right of plaintiff as the representative of the *cestuis que trust* to impress the assets of the bank, which were increased to that extent, with a trust for the payment of the unpaid amount of the collection made on the pension check.   *Nat'l Bank v. Sanford*, 62 Mo. App. 394; *In re Estate of Horner*, 66 Mo. App. *loc. cit.* 536; *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Carter*, 88 Mo. 514; *Phillips v. Overfield*, 100 Mo. *loc. cit.* 475.

The judgment herein will be reversed and the cause remanded, with directions to the trial court to enter a judgment for plaintiff for the balance of the collection of the pension check.   Judge BLAND concurs; Judge BIGGS dissents and asks the case to be certified to the supreme court as opposed to the cases of *Phillips v. Overfield, supra*, and 74 Mo. *loc. cit.* 418; 67 Mo. 395, and 79 Mo. 252.   It is so ordered.

BIGGS, J. (*dissenting*).—Under the authorities in this state the conclusion reached by my associates must rest on two affirmative propositions.   *First*.  That as to the fund in question the relation of principal and agent and not that of debtor and creditor existed between the appellant and the bank; and, *second*, that the evidence tended to prove that the amount collected by the bank and which was wrongfully mixed with other assets or money of the bank increased or swelled the assigned assets.   In my opinion the record sustains neither proposition.

The evidence is conclusive that the appellant delivered the pension check to the bank for collection and *general* deposit. Whether the proceeds of the draft were to be deposited to the individual credit of the appellant or to his credit as guardian is conflicting. I deem the question an immaterial one. In any event it was contemplated by the parties that the money should be placed on general deposit, which when done, created the relation of debtor and creditor between them. *State ex rel. v. Moore*, 74 Mo. 413; *loc. cit.* 418; *State ex rel. v. Powell*, 67 Mo. 395; *Dickinson v. Coates*, 79 Mo. 250; *loc. cit.* 252. Hence it seems to me that the discussion in the majority opinion, based on the fact that the bank knew that the appellant held the check in a fiduciary capacity, is apart or foreign to the controlling legal questions in the case. The question is did the negotiations between the appellant and the bank create between them the relation of trustee and *cestui que trust* as to the proceeds of the draft? Under the authorities cited this could not be unless it was understood that the money was to be held as a *special* deposit, of which there is not a scintilla of proof.

But conceding that the draft was delivered to the bank for collection *only*, the question remains is there any evidence to warrant the conclusion that the conversion of the proceeds of the draft swelled the *assigned assets* of the bank? This is the doctrine of all the cases in this state. *National Bank v. Sanford*, 62 Mo. App. 394; *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514; *Phillips v. Overfield*, 100 Mo. 466. The "ear mark" doctrine was first discarded in *Harrison v. Smith, supra*. It was there held that although the trust money had been intermingled with the individual money of the trustee so that it could not be identified, or that it could not be traced into a particular asset, yet a court of equity would declare a prefer-

ence in favor of the claim of the *cestui que trust*, provided there was evidence that the converted trust fund *increased the existing assets* of the insolvent or deceased trustee. This limitation is just and reasonable, and in my opinion absolutely essential to the ends of justice, for without it a *cestui que trust* would be able in every case to gain a preference. In the case of *Phillips v. Overfield*, *supra*, the preference was denied upon the ground, as stated by Judge BLACK, "that it was just as fair to say that the property which he owned at his (trustee) death is the product of money and property received from the defendant creditors as it is to say it is the product of the assets of his father's estate."

So in the case at bar it is just as fair to say that the small amount of property assigned to the defendant was the product of money subsequently deposited by others as to say that it was the product of the money collected by the bank on the pension check. For twenty days after the check was received the bank continued to do business in the usual way. I therefore dissent from the majority opinion, and as I am of the opinion that the decision is opposed to the doctrine of the cases herein cited, I ask that the cause be certified to the supreme court for final determination.