Bircher v. Sheet Metal Ornament Co.

RUDOLPH BIRCHER, Respondent, v. ST. LOUIS SHEET
METAL ORNAMENT COMPANY et al., Appellants.

St. Louis Court of Appeals, December 27, 1898.

77  509
86  183
77  509
163s 465
77  509
90  262
90  264
77   509
r163s 461

1. Assignee of Insolvent Corporation: SUIT IN EQUITY TO
CHARGE ASSETS WITH A LIEN: PARTIES. The conveyance to the trustee
devolved full title upon him and imposed on him the duty of full
administration and disbursement of the assets, and he was the only
necessary party to a suit seeking to charge the assets in his hands
with a lien.

2. ———: ———: DEBTOR AND CREDITOR: CESTUI QUE TRUST. In the
case at bar the contract is susceptible of only one interpretation,
which is, that the $1,000 therein receipted for was to be paid for the
article therein agreed to be sold, to wit, "20 shares of its preferred
stock" until this stock came into being, the price to be given for it
belonged to plaintiff, and the prior custody of the money by the cor-
poration was that of agent, bailee or trustee for the plaintiff, as against
whom it could neither acquire nor assert title, to the money before
rendering that which it had agreed to exchange for it.

3. ———: ———: ACQUIESCENCE IN CHANGE OF RELATIONSHIP: SUBSE-
QUENT CREDITORS: ESTOPPEL. In the case at bar, the facts in this
record wholly fail to show either that the plaintiff agreed to conceal
his claim against the corporation, or that with knowledge of its obten-
tion of credit on the faith of the freedom of its assets from any liabil-
ity to plaintiff, he withheld notice or information of his claim to the
persons so dealing with the corporation.

4. Practice, Trial: REPLY NOT FILED TO ANSWER. Where parties pro-
ceed to try the issues tendered by the answer without filing a reply
thereto, plaintiff will not be heard to say "the new matter stands
admitted because no reply was filed."

5. Trust Funds: INTENTIONAL MISAPPLICATION. In the case at bar,
the trust funds of plaintiff were intentionally misapplied and con-
verted to its own use by the defendant corporation, within ten months
of its insolvency.

6. ———: INTEREST FROM TIME OF CONVERSION. When the defendant
violated its written contract with plaintiff, it became liable for the
money received thereunder and the trial court properly allowed inter-
est from the time of the conversion.

*Appeal from the St. Louis City Circuit Court.*—Hon. JOHN A. TALTY, Judge.

AFFIRMED.

GEO. M. BLOCK and GEO. W. LUBKE, Jr., for appellants. .

All the beneficiaries in the deed of trust to appellant Lambert E. Walther are necessary parties to this suit. Russell v. Grant, 122 Mo. 161, 174; Coe v. Retter, 86 Mo. 277, 285; Crandall v. Cooper, 62 Mo. 478; Missouri Fire Clay Works v. Ellison, 30 Mo. App. 67. The conveyance in question made to appellant Walther was lawful and valid. Alburger v. Bank, 123 Mo. 313, and cases cited; Foster v. Planing Mill Co., 92 Mo. 79. The relationship between respondent and the St. Louis Sheet Metal Ornament Company in its inception even, was that of debtor and creditor, not trustee and *cestui que trust*. Schierenberg v. Stephens, 32 Mo. App. 314; Keane v. Beard, 11 Mo. App. 10, 20; Eaton v. Bank, 144 Mass. 260; Winters v. Armstrong, 37 Fed. Rep. 508, 521. Conceding that the relationship between respondent and said company was that of trustee and *cestui que trust* in its inception, respondent has acquiesced in the change of that relationship to that of debtor and creditor made subsequently when, with full knowledge of the company's financial condition, and that the money paid by him to the company was applied to the payment of its debts and that the company was taking no further steps to increase its capital stock as proposed to him, he failed to assert his rights to recover back his money and ratified the action of the company by subsequently asking for his certificate of stock. After the rights of subsequent creditors have intervened he is estopped from claiming any trust. Teasdale v. McPike, 25 Mo. App. 341; Dymock v. Railway,

54 Mo. App. 400; Bank v. Bank, 71 Mo. 183; Neuhoff
v. O'Reilly, 93 Mo. 164; Chapman v. Railroad, 6 Ohio
St. 119; Kent v. Quicksilver Mining Co., 78 N. Y. 159,
and cases cited; Pomeroy's Eq. Jur., secs. 817, 965,
and cases cited. Courts of equity do not aid those who
do not use reasonable diligence or discretion in the
conduct of their affairs. Chamberlain v. Peltz, 1 Mo.
App. 183. Respondent has slept on his rights so long,
that he can not be heard to assert them now to the
injury of rights acquired by third persons having no
knowledge of them. "Equity aids the vigilant, not
those who slumber on their rights." Shradski v.
Albright, 93 Mo. 42; Kroenung v. Goehri, 112 Mo.
641; Landrum v. Union Bank Co., 63 Mo. 49; Mathias
v. O'Neill, 94 Mo. 20; Smith v. Washington, 11 Mo.
App. 519; Burgess v. Railway, 99 Mo. 496. According
to his claims respondent is in a position similar to that
of one who holds a properly executed mortgage in the
the assets of his debtor, which he deliberately with-
holds from record. As to subsequent creditors of his
debtor, he can not be heard to assert his rights under
the mortgage lien. Bank v. Buck, 123 Mo. 141; Bank
v. Doran, 109 Mo. 40; Williams v. Kirk, 68 Mo. App.
457; Dry Goods Co. v. Brown, 73 Mo. App. 245, and
cases cited. Conceding that the relationship between
respondent and said company in its inception was that
of trustee and *cestui que trust*, respondent is not entitled
to any part of the assets in appellant Walther's hands
as trust funds, because there is no proof that the assets
which came into said Walther's hands were swelled by
respondent's money. The proof shows the contrary.
Phillips v. Overfield, 100 Mo. 466; Ulrici v. Boeckeler,
72 Mo. App. 661; Huettemann v. Vieselmann, 48 Mo.
App. 582; Dailey v. Dailey, 125 Mo. 96. The facts in
the case at bar are clearly distinguishable from those
in the following cases, and hence the rule announced

in them does not apply. Harrison v. Smith, 83 Mo. 210; Stoller v. Oates, 88 Mo. 514. Interest is the creature of statute and is allowed only to creditors. Respondent claims a specific fund and that he is not a creditor. The allowance of interest in the finding and judgment was clearly error and makes the judgment excessive. Laws of Missouri, 1891, p. 169; Hope v. Barker, 112 Mo. 338; Bradley v. Asher, 65 Mo. App. 589.

J. M. HOLMES for respondent.

The increased stock for which plaintiff subscribed, never came into existence. His subscription was conditional upon a valid increase of stock, and until such increase was had the defendant corporation receiving his subscription held it in trust for him. 2 Commentaries on the Law of Corporations, Thompson, secs. 2079–2082; State ex rel. v. McGrath, 86 Mo. 239; Thompson on the Liability of Stockholders, sec. 120; Haskell v. Worthington, 94 Mo. 560; Morawitz on Corporations, sec. 137, and cases cited; Minneapolis Machine Co. v. Davis, 40 Minn. 110. The defendant corporation, by fraudulently commingling plaintiff's money, held in trust, with its own assets, did not divest plaintiff's title, and plaintiff has the right to follow the fund, and has an equitable lien thereon to the extent of his money incorporated therein. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 521; Munroe v. Collins, 95 Mo. 33; Flint Road Cart Co. v. Stephens, 32 Mo. App. 341; Snodgrass v. Moore, 30 Mo. App. 232; Hockensmith v. Same, 57 Mo. App. 378; Bank v. Sanford, 62 Mo. App. 394; Independent District v. King, 80 Iowa, 497. The defendant Walther, trustee, has no greater or other right in the premises than his assignor. Green v. Conrad, 114 Mo. 651; Independent District v. King, 80 Iowa 497.

BOND, J.—This is a suit in equity, the object of which is to charge the assets in the hands of the assignee of an insolvent corporation, with a lien for $1,000, alleged to have been delivered to the corporation for the purchase of its preferred stock to that amount, which it agreed to issue to plaintiff upon an increase of its capitalization to be thereafter effected. The transaction between the parties was evidenced by the following contract:

"ST. LOUIS, October 9, 1896.

"Received of Rudolph Bircher the sum of one thousand dollars ($1,000) for which the undersigned agrees to sell to him twenty shares of the par value of $50.00 each of its preferred stock out of the increase of its capital stock, now about to be increased to $15,000.00, and to be made in accordance with the laws of the State of Missouri, said increase to be made as speedily as the law will allow, and the certificates, for said stock to be delivered as soon as such increase is authorized, upon the return of this receipt.     St. Louis Sheet Metal and Ornament Company.

"By FRED BUEL, Pres.
"CHAS. A. SCHULZE,
"Sec'y and Treas."

There was no increase of the stock of said corporation, hence no shares were delivered to plaintiff, as provided for in the above contract, nor was the money returned to him.     On the twelfth of August, 1897, the corporation conveyed its entire plant and assets to defendant Walther, for the benefit of certain of its creditors in a numerical order of priority according to the appearance of their names on an attached schedule, plaintiff's name being the last on the list of creditors. The money in question was advanced to plaintiff by the administrator of his father's estate, who testified

VOL. 77 app—33

that he was informed by the officers of the corporation that its stock was to be increased so as to enlarge its business, to put in more machinery, print a descriptive catalogue, and get a larger place; that said officers also informed him that the corporation was entirely solvent, and did not owe anything at that time, and that they had already secured the entire subscription for the expected increase of their capital stock, except about $2,000; that upon these representations he consented to advance plaintiff the money to buy $1,000 in value of the preferred shares to be issued when the capital stock should be increased. It is not clearly shown in the testimony what specific application was made by the corporation of the money received from plaintiff, but it does appear that it was commingled with the fund of the corporation and converted to its use and expended by it in the conduct of its business and for corporate purposes. The corporation appears to have been insolvent when it received the subscription from plaintiff. In the present action plaintiff joined the trustee and beneficiaries named in the schedule as codefendants with the corporation. There was a decree in his favor, from which the appeal is prosecuted.

The first point insisted upon for a reversal is the fact that one of the beneficiaries joined as defendant was not served with process. There was no necessity for joining any of the *cestuis qui trusts*. The conveyance to the trustee devolved full title upon him and imposed on him the duty of full administration and disbursement of the assets, to which end he was placed in possession of the property. He was therefore the only necessary party to a suit seeking to charge the assets in his hands with a lien. The beneficiaries, though proper, were not necessary parties to that action. Story's Eq. Pleading, secs. 149, 215 and 216; Harrison v. Smith, 83 Mo. 210; Paul v. Draper, 73 Mo. App.

loc. cit. 566; Hall v. Klepsig, 99 Mo. loc. cit. 86; Tiernan v. Spiva, 97 Mo. 98. So likewise the trustee might have sued in his own name. R. S. 1889, sec. 1991; Glenn v. Hunt, 120 Mo. loc. cit. 341.

The second point made by appellants is that the conveyance to the trustee was a valid exercise of the right to prefer its creditors on the part of the corporation. We will concede for this discussion that the conveyance passed to the trustee all the title and interest of the corporation in its assets. But no more. That assumption makes it important to determine the third point urged in appellant's brief, which is, that the corporation by its contract with plaintiff established the relation between the two of "debtor and creditor, not trustee and *cestue que trust.*" This view of the effect of the contract in question can not be maintained. That instrument is susceptible of only one interpretation which is that the $1,000 therein receipted for was to be paid for the article therein agreed to be sold, to wit, "20 shares of its preferred stock." Until this stock came into being, the price to be given for it belonged to plaintiff, and the prior custody of the money by the corporation was that of agent, bailee or trustee for the plaintiff, as against whom it could neither acquire nor assert title to the money before rendering that which it agreed to exchange for it. The general rule applicable to such a transaction has been well expressed by the Kansas City court of appeals, Clark v. Bank, 57 Mo. App. loc. cit. 286, as follows: "By the well settled doctrine of equity a constructive trust arises where one party has obtained money which does not equitably belong to him and which he can not in good conscience retain or withhold from another who is beneficially entitled to it."

Appellants' next contention is that conceding the relationship of trust was created between plaintiff and

the corporation, yet plaintiff, under the evidence, is estopped from "claiming any trust." In support of this appellants insist that plaintiff's position is analogus to the holder of an unrecorded mortgage, who under certain circumstances may find his security postponed to the claims of subsequent creditors. It is the well settled law that such postponement of an unrecorded mortgage does not take place, unless the mortgagee, either by agreement, or after knowledge of the obtention of credit on the faith of the freedom of the property from any such lien, withholds his mortgage from record. Hord v. Harlan, 143 Mo. 469. The difficulty with appellants' argument is that the facts in this record wholly fail to show either that plaintiff agreed to conceal his claim against the corporation, or that with knowledge of its obtention of credit on the faith of the freedom of its assets, from any liability to plaintiff, he withheld notice or information of his claim to the persons so dealing with the corporation. The preponderance of the evidence shows that the plaintiff knew nothing whatever of the actual condition of the affairs of the corporation, beyond the representations made to the administrator of his father's estate, and to his brother, who was an employee of the corporation and to whom it promised a better position if he could induce plaintiff to make the subscription. It does not appear in the testimony of either of these parties that plaintiff was told that the corporation was creating any of the debts due the defendants upon the faith of non-existence of plaintiff's right to its assets, and that with such knowledge plaintiff intentionally refrained from asserting such rights. On the other hand, as we have seen, the officers of the corporation misrepresented its status, both as to the increase of the stock, and as to its solvency in answering the inquiry of the administrator, and that the latter took no further part in the

transactions between it and plaintiff after advancing plaintiff the money to purchase the preferred stock. Both the testimony of plaintiff and his brother exclude the idea that any such knowledge was imparted to him by the brother. On the trial the latter testified that he repeatedly demanded for plaintiff the shares of preferred stock, making the last demand in May, 1897, hence, so far from concealing, plaintiff up to this time was continually asserting his claim against the corporation, and we have been wholly unable to find in the record any evidence that he thereafter intentionally withheld information of the liability of the corporation to him from any person subsequently dealing with it. It is insisted, however, for appellant, the Jefferson Bank, that, the averments in its answer, that it had no knowledge of plaintiff's claim to a lien when it loaned the money due it from defendant corporation, and supposed it to be solvent at that time, were admitted by plaintiff because the trial was had without a reply filed to such answer. This conclusion does not follow. For the law is well settled, where parties proceed to try the issues tendered by the answer without filing a reply thereto, "the plaintiff will not be heard to say the new matter stands admitted because no reply was filed." Turner v. Butler, 126 Mo. loc. cit. 136; Thompson v. Woolridge, 102 Mo. loc. cit. 510; Meader v. Malcom, 78 Mo. 550; State ex rel. v. Williams, 77 Mo. 463; Pullis v. Robinson, 73 Mo. 202; Howell v. Reynolds Co., 51 Mo. 154. However, the averments of the answer are not in themselves sufficient to sustain the theory of appellant, even if they were expressly admitted to be true, for it is nowhere stated in the answer that the debt due the Jefferson Bank was created *after* plaintiff's right to a lien accrued. Neither did the answer aver that plaintiff intentionally withheld knowledge of his claim. These were essential omissions.

The next error assigned relates to the sufficiency of the evidence to show that by converting plaintiff's money the corporation swelled the assets which it conveyed to the trustee. That the corporation willfully commingled plaintiff's money with its own and used the whole indiscriminately in paying debts contracted in carrying on its business beyond dispute. The rule that equity will follow a trust fund through all its transformations as long as it can be distinguished, but will cease the pursuit when all means of identification fail, was formerly of universal application. In modern times and in some of the states a more advanced step has been taken in carrying out the enlightened ideas of exact justice natural to courts of equity. This modification of the rule is aptly expressed by our supreme court in the following language: "But the modern doctrine, and especially the adjudication by the appellate courts of this state go farther, and hold that when a trustee or bailee wrongfully mixes trust money with his own, so that it can not be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out of the insolvent estate the amount due the *cestui que trust*, although it can not be identified or separated from other funds with which it was mixed. In Harrison v. Smith, 83 Mo. 210, a bank in this state undertook to make a loan of money on real estate security here for a party who resided in the State of New York, and kept a bank account there, and the plaintiff sent the bank making the loan a check for the sum to be loaned, payable to it, which was to be paid to the borrower when the terms of the loan were complied with. The bank credited the amount received to plaintiff and sent the check to its correspondent in New York by whom it was collected and credited to the bank here, and in the meantime the latter led the plaintiff to

believe that the loan had been perfected, and thereafter made an assignment for the benefit of its creditors. And it was held that the relation of trustee and *cestui que trust*, and not that of depositor and depositary, existed between the bank and plaintiff. And that when a trustee mixes trust money with his own so that it can not be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out of the assigned estate the amount due the *cestui que trust*." Evangelical Synod of North America v. Schoenich, 143 Mo. loc. cit. 663–664. The facts in the case last cited are decisive of the application of the rule therein announced to the facts in the case under review. For on the point as to the uses to which the money was put for which the lien was sought in both cases, the showing made by the evidence is identical. In the case cited the facts were these: "From 1887 to the 14th of Sept. 1893, the treasurer of a church deposited various sums of money received for it with the firm of H. Merten & Company, who were aware that the fund belonged to the treasurer in his capacity as such." Most of the money left "with the said firm" consisted of small checks," payable to the treasurer. All of it was deposited, when received, by the firm to its own bank account. The firm paid no interest on the sums received by it from the treasurer, but gave money to him as he needed it. On the twenty-ninth of August, 1893, six years after this course of business between the treasurer and the firm, the amounts so deposited had accumulated to $3,300. Of this sum the partnership returned $300 to the treasurer, and failed to return the $3,000 remaining, because it had been used by them "*in their business*." Thereafter the firm was dissolved and administration was had on the partnership estate, which proved to be insolvent, and not able to

pay more than twenty-five per cent on the dollar of its indebtedness. The church sued in equity to impress the assets of the insolvent copartnership in the hands of the administrator with a trust for the $3,000 converted and used *"in their business,"* by the partnership. In referring to the foregoing facts the court in that case said; "In the case at bar there is no such thing as tracing the money deposited by Wobus with S. H. Merten & Company, into any particular property, nor was it attempted to be done. The most that can be said is that the company had this money and other moneys of their own, all of which were deposited by them in the Union Savings Bank at St. Charles from time to time in their own name, and checked out by them for their own use and benefit as occasion might require. Merten & Company only had on deposit to their credit in said bank at the time of the dissolution of the firm the sum of $15.92, adding; "Our conclusion is that whatever the rule may be elsewhere, under the law as declared by the appellate court of this state plaintiff was entitled under the facts disclosed by the record to have the firm assets charged with the amount of the converted fund as a preferred demand, and that the court below correctly so held." In the case at bar the trust funds of plaintiff to the amount of $1,000 were intentionally misapplied and converted to its own use, *"in its business"* by the defendant corporation within ten months of its insolvency. In the case before the supreme court the process of conversion to the same sort of uses *extended over a period of six years* prior to the failure of the copartnership. The two cases are undistinguishable in principle, the only difference being that the conversion in the one before us was much closer to the time of the insolvency of the trustee than in the one before the supreme court. In neither case was there a fact nor

inference tending to show that the particular assets sought to be subjected were swelled or increased except as that might normally happen by the conditions of the trustee's estate resulting from the payment of some of his business debts with the money of another. This was deemed by the supreme court ample ground to charge the general assets of the insolvent trustee with the prior lien for the fund so converted by him. The above decision is the latest ruling of the supreme court on this subject, after a full discussion of the cases here and elsewhere. It is a clear and explicit. It is also directly in point, and a controlling authority in this court, and hence decisive of the case before us. It was not cited in briefs of counsel on either side. We have therefore set forth a full statement of the facts in judgment, as well as the rule announced. It follows from that decision that the point under review must be ruled against appellant.

Finally appellant complains of the allowance of interest. The moment the defendant corporation violated its written contract with plaintiff, it became liable for the money received thereunder, and interest was properly allowed as from the time of the conversion. Padley v. Catterlin, 64 Mo. App. loc. cit. 647. The decree in this case is affirmed. Judge BLAND concurs; Judge BIGGS dissents for the reason stated in the second paragraph of his dissenting opinion in the case of Paul v. Draper, 73 Mo. App. loc. cit. 570.

### DISSENTING OPINION BY JUDGE BIGGS.

In this case the assignment was made ten months after the alleged conversion of the trust fund. During the entire time the defendant was engaged in active business. If the opinion of my associates receives the sanction of the supreme court, then any *cestui que trust*

may have his claim preferred in the distribution of the general estate of an insolvent trustee. The advanced doctrine on this subject has been adopted in this state, but none of the cases have upheld preferences under such a state of facts as we have here. In all of the reported cases an examination of the facts will show that there was evidence authorizing the inference that the trust money of the proceeds of the trust property had gone *into and swelled the existing or assigned assets.* Thus in Harrison v. Smith, 83 Mo. 210, the wrongful mixing of the trust money with the general assets of the bank took place only a few days before the bank assigned. In Stoller v. Coates, 88 Mo. 515, the trust funds were intermingled the day before the failure of the bank. The case of Bank v. Sanford, 62 Mo. App. 394, presented a similar state of facts. In Brick Co. v. Schoenick, 65 Mo. App. 283, the conversion or misappropriation of the trust money was just before the failure of the company. In the recent case of Evangelical Synod, etc., v. Schoenick, 143 Mo. 652, it was shown that for several years prior to the failure the agent of the plaintiff had deposited the money of the church with S. H. Merten & Company, and that the latter had deposited it in a bank, but it appears that the use of the money in the business of the company occured a short time before the failure. I repeat, that in all of the foregoing cases the court was justified in deciding and they in effect did decide that the converted trust funds had gone into and *increased the assets sought to be administered or distributed* In Synod v. Schoenick the court recognized this limitation. In commenting on the *Coates case* Judge BURGESS, who wrote the opinion, said: "That while it may be impossible to follow a fund into its diverted use, it is always possible to make it a charge upon the estate or assets, *to the increase or benefit of which it had been*

*appropriated.''* So in the case of Phillips v. Overfield, 100 Mo. 466, the preference was denied on the application of the rule for which I contend. Following the Phillips case we denied the preference in Ulrici v. Boeckler, 72 Mo. App. 661, upon the ground that the trust money had been mixed with the general estate of the trustee several years before his death. I am, therefore, of the opinion that the decision in the case at bar is opposed to the decision of the supreme court in the Phillips case, *supra,* and of this court in the Ulrici case, *supra,* and that it had no support whatever in any adjudicated case in this state. I, therefore, ask that the case be certified to the supreme court.