PAUL, Appellant, v. DRAPER.

### Division One, November 12, 1900

Preference: TRUST FUND: GUARDIAN: DEPOSIT IN BANK. A fund deposited in a bank by a guardian and curator of minors known by the bank to be so deposited by him as trustee for them, can not be paid in preference to the claims of other depositors, unless there is something in the circumstances of the deposit to constitute it a special deposit (that is, something which precludes the bank from mingling it with the general moneys of the bank), for if it was a general deposit the title thereto passed to the bank and the relation of debtor and creditor between the bank and guardian was created, and not that of trustee and *cestui que trust*.

Transferred from St. Louis Court of Appeals.

JUDGMENT OF THE CIRCUIT COURT AFFIRMED.

*Wm. O. Mead* and *T. T. Loy* for appellant.

*Nixon & Wallace* for respondent.

BRACE, P. J.—This is an appeal from a judgment of the Webster County Circuit Court in favor of the defendant, to the St. Louis Court of Appeals, where the judgment of the circuit court was reversed, but BIGGS, J., one of the judges of said court, deeming the decision therein contrary to certain previous decisions of this court, the case has been certified here for determination as required by section 6 of the Constitutional Amendment of 1884. [73 Mo. App. 566.]

The facts in the case, briefly stated, are as follows:

The plaintiff is the guardian and curator of James W.

and Nannie E. Defriese, minors. The defendant is the assignee of the State Bank of Marshfield.

On the eleventh day of April, 1896, the plaintiff deposited in said bank a check as follows:

"United States Pension Agency No. 341672, Topeka, Kansas, April 10, 1896. Assistant Treasurer United States, St. Louis: Pay to Thomas K. Paul, Guardian, ten hundred and eighty-four and 53-100 dollars.

"G. W. Glick, U. S. Pension Agent.

, "By T. H. Glick, Clerk."

And received from the bank a deposit ticket as follows:

"Deposited by T. K. Paul, Gdn., in State Bank of Marshfield, Mo., April 11, 1896 (checks), pension check, $1,084.53. Duplicate. T. G. Salmon, Assistant Cashier."

Thereupon an account was opened on the books of said bank in the name of T. K. Paul and said amount placed to his credit, and he on the same day commenced checking on the same in his own name, and between that date and the fourth of May, 1896, drew ten of such checks amounting in the aggregate to the sum of $179.50 for the use of his wards which were paid by the bank and charged to that account, leaving a balance of $905.03 due him on said account at that date. The pension check was in the usual course of business forwarded by said bank to its St. Louis correspondent, to whom it was paid by the U. S. Treasury Department on the thirteenth of April, 1896, and the proceeds went into the general assets of the bank. On some day after the fourth of May, 1896, the bank made a general assignment of its assets to the defendant for the benefit of its creditors; what those assets were, their amount, character or value, or the day on which the assignment was made, does not appear. On the twenty-ninth day of July, 1896, this suit was instituted to impress a trust upon the assets of the bank in the hands of the assignee in favor of plaintiff as guardian and curator as afore-

said, for said sum of $905.03, and to require the payment of the same as a preferred claim.

Although the account was opened and kept and the checks thereon drawn in the name of T. K. Paul, the officers of the bank knew that the pension check was held by said Paul only as guardian and curator of said wards. No misappropriation of the fund of the wards was intended or effected by this manner of keeping the account, and there is no question but that at the date of the assignment the balance due thereon was a credit of the trust estate, and the case would have been the same, and may be treated as if the deposit had been made, checked against, and the account kept, in the name of the plaintiff as guardian and curator of said wards. The real issue is between the plaintiff as such guardian and curator and the other creditors of the bank, and the question to be determined, whether his claim as such trustee for said balance is to be preferred to the claims of the other creditors of the bank in the distribution of its assets by the assignee.

In support of the affirmative of this proposition counsel for plaintiff cite the following Missouri cases: Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; National Bank v. Sanford, 62 Mo. App. 394; Flint Road Cart Co. v. Stephens, 32 Mo. App. 341, and Snorgrass v. Moore, 30 Mo. App. 232. To which the majority of the court of appeals in the opinion sustaining their contention add the cases of Phillips v. Overfield, 100 Mo. loc. cit. 475, and In re Estate of Horner, 66 Mo. App. loc. cit. 536.

These cases, as well as the other Missouri cases bearing on the question, were examined and carefully considered in the more recent cases of Evangelical Synod v. Schoenich, 143 Mo. 652; Pundmann v. Schoenich, 144 Mo. 149, and Tiernan's Ex. v. Security B. & L. Ass'n, 152 Mo. 135, and a further particular analysis of each is unnecessary for the

purposes of this case.   The rule to be deduced from all these cases when considered together, and which may be characterized as the Missouri doctrine in contradistinction from that prevailing in some other jurisdictions, with which it is not in harmony, is, that where a trustee, agent or bailee wrongfully mixes trust money with his own, so that it can not be distinguished which is his own, and which is trust money, and becomes insolvent, equity will follow the trust money, by taking out of the insolvent estate of the fiduciary the amount due the *cestui que trust,* although it can not be identified or separated from the other funds with which it was mixed.

In order to bring the plaintiff's case within the operation of this rule the fiduciary relation of the bank to the deposit must appear.   The bank could not wrongfully mix the trust fund with its own unless by reason of the deposit it becomes a trustee, agent or bailee of that fund for the benefit of the *cestui que trust* as illustrated in some of the cases from which this rule is deduced.   The fact that the deposit was of a trust .fund, and known to the bank to be such, would not of itself make the bank a trustee of the fund for the benefit of the *cestui que trust.*   In order to have that effect there must have been something in the circumstances of the deposit to constitute it a special, as contradistinguished from a general, deposit, into which two classes all deposits in commercial banks may be divided.   If the deposit belonged to the former class the fiduciary relation might well arise; if to the latter, in the absence of *mala fides,* it could not do so, for by a general deposit in good faith the title to the fund deposited passed. The bank became the owner thereof, the relation of debtor and creditor, and not that of trustee and *cestui que trust,* was created.   [State ex rel. v. Powell, 67 Mo. 395; Ayres v. Farmers & Merchants Bank, 79 Mo. 421; State ex rel. v. Moore, 74 Mo. 413; Phillips v. Overfield, 100 Mo. 466; Marine Bank v. Fulton Bank, 2 Wall. (69 U. S.) 252; Nat. Bank v. Ins. Co., 104 U. S. 54; Thompson v. Riggs, 5 Wall.

(72 U. S.) 678, loc. cit.; Bank v. Millard, 10 Wall. (77 U. S.) 152; Morse on Banks & Banking (3 Ed.), secs. 187, 567, 568, 573; Fletcher v. Sharpe, 108 Ind. 276; Cavin v. Gleason, 105 N. Y. loc. cit. 262; O'Connor v. M. Bank, 124 N. Y. 324; Am. Trust & Bank. Co. v. Boone, 102 Ga. 202; McAfee v. Bland, 11 S. W. Rep. (Ky.) 429; Nonotuck Silk Co. v. Flanders, 87 Wis. 237; Little v. Chadwick, 151 Mass. 109; Wetherell v. O'Brien, 140 Ill. 146; 33 Am. St. Rep. 221, and cases cited in note.]

There is nothing in the evidence in this case tending to prove that the deposit was special in any sense. The suggestion that the pension check was deposited for collection only, is not only not supported by any substantial evidence, but is negatived by all the facts in the case. As was said by this court, per BLACK, J., in Phillips v. Overfield: "In some cases like that of Harrison v. Smith, 83 Mo. 210, where an agent or trustee mixes a known or definite amount of trust money with his own so that it can not be distinguished, equity will follow the money by taking out the amount due the beneficiary. The present is no such case. The creditors of Amos R. Phillips are entitled to some consideration as well as the distributees." So in the case in hand in which the bank became neither the bailee, agent, nor trustee of the fund deposited, as it might have done by accepting the deposit as such; its other creditors "are entitled to some consideration." By the general deposit in this case, whereby no misappropriation was intended or accomplished the owner of this fund became a creditor of the bank and stands upon precisely the same footing as the other general depositors in the bank, who are creditors thereof, and is entitled to no preference over them. The doctrine of the authorities on this subject is made sufficiently clear by the following quotation from two of the cases cited. In Cavin v. Gleason, 105 N. Y. loc. cit. 262, it is said per ANDREWS, J., speaking for the court, that, "The equitable

doctrine that as between creditors equality is equity, admits, so far as we know of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment. If it appears that trust property specifically belonging to the trust is included in the assets, the court, doubtless, may order it to be restored to the trust. So, also, if it appears that the trust property has been wrongfully converted by the trustee, and constitutes, although in changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles that the things into which the trust property has been changed should, if required, be set apart for the trust, or if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property, or funds, or proceeds of the trust property, entering into and constituting a part of the assets." And by MITCHELL J., in Fletcher v. Sharpe, 108 Ind. 276; that, "When deposits are received, unless they are special deposits, they belong to the bank as a part of its general funds, and the relation of debtor and creditor arises between the bank and the depositor. This is equally so whether the deposit is of trust moneys, or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund." The evidence in this case shows conclusively that the deposit in question by the plaintiff was a general and not a special one, that there was thereby no misappropriation of the fund in fact, and in the language of this court, "the bank simply became indebted to him in his official capacity, and he took the risk of being able to collect it when he required it." [State ex rel. v. Powell, 67 Mo. 398; State ex rel. v. Moore,

74 Mo. 418.] No property specifically belonging to the trust fund is traced into the assigned assets. The mingling of that fund by the bank with its other assets after it had been deposited as stated, was no wrongful conversion thereof, but simply a mingling of its own funds, and there is no ground upon which to impress a trust in favor of the plaintiff's claim upon the assets assigned in order to give him a preference over the claims of other creditors.   In other words there is no equity founded on agreement, no wrongful conversion and no relation of the debt to the assigned property to entitle the plaintiff to preferential payment.

Of the cases cited by counsel for plaintiff, two only can be fairly said to support their contention, Boyer v. King, 80 Iowa 497, and McLeod v. Evans, 66 Wis. 406; the latter being the leading case cited in the former in support of the conclusion reached therein.   It is sufficient to say in regard to these cases, that McLeod v. Evans has been over-ruled and its doctrine repudiated by the Supreme Court of Wisconsin in several later cases.   [Nonotuck Silk Co. v. Flanders, 87 Wis. 237; Henry v. Martin, 88 Wis. 367; Stevens v. Williams, 91 Wis. 58, and others.]   And that the ruling in the Iowa case seems to have been predicated principally upon the fact that the deposit was of public funds, which, whatever may be thought of its reasoning, dis-tinguishes it from the case in hand, in which, on principle and authority, we are satisfied that the plaintiff is not entitled to the preferences he asks.   The judgment of the circuit court will therefore be affirmed, and the judgment of the St. Louis Court of Appeals reversed.   All concur.