ELMER et al., Respondents, v. CAMPBELL et al., Appellants.

St. Louis Court of Appeals, March 9, 1909.

1. PRACTICE: Parties: Consideration. A promise to pay money to several parties was sufficient to authorize a recovery on the part of all of them, although the consideration for the promise was furnished by only one.

2. PARTNERS: Intention to Form Partnership: Promise by One on Behalf of All. Two parties agreed to form a partnership for the purpose of purchasing a stock of goods from a trustee in bankruptcy, in which transaction they made an arrangement with all the creditors of the bankrupt, in order to get the stock of goods out of the hands of the trustee. One of such partners, while the negotiations were pending, agreed for a consideration to pay a sum of money to third parties, which sum the bankrupt had held in trust. *Held*, the agreement was binding upon the other partner.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Lamar & Arthur* for appellants.

Where the evidence shows a transaction with an individual member of a partnership made before the partnership is entered into, and the suit is against the

partnership, and the evidence does not show a justification for the action against the partnership, this action cannot be maintained.   Calloway v. Woodward, 28 Mo. App. 324.

*J. D. Gustin, G. C. Dalton* and *W. P. Elmer* for respondent.

Extinguishment or abandonment by plaintiffs of their claim against the company was sufficient consideration for defendants' promise to pay the debt.   Delaney v. Bowman, 82 Mo. App. 252; Brownlew v. Wallard, 66 Mo. App. 636; Lumber Co. v. Meffert, 59 Mo. App. 427; Lamp Co. v. American Mfg. Co., 64 Mo. App. 115; McKerson v. Leader Mer. Co., 90 Mo. App. 466; Houck v. Frisbie, 66 Mo. App. 16; German v. Gilbert, 83 Mo. App. 411.

GOODE, J.—Plaintiffs, J. R. Callahan and America Callahan, were principals on a promissory note for $200, executed and delivered to the Dent County Savings Bank, on which plaintiffs Elmer, Dye and Collier were sureties, and were indemnified by a deed of trust on a tract of land.   The Callahans sold and conveyed the land to J. A. Murray.   The sureties on the note to the bank released the deed of trust given to indemnify them, on an agreement that $75 of the purchase money should be turned over to the sureties to be applied on the note.   Murray gave a check for this sum, which was turned over by the other sureties to Collier, to be by him delivered to the bank for credit on the note.   Collier intended to do this, but for some reason, deposited the check in the safe of the Dent County Mercantile Company.   Powell, an officer of the company, took the check, cashed it and credited it on an account which J. R. Callahan owed the company.   The evidence is conflicting regarding how this came to be done.   For the plaintiff it tends to prove Collier put the

note in the mercantile company's safe, telling Powell it was not to go in payment of Callahan's account to the company, but was to be turned over to the bank. Powell testified Collier told him the check was "to be used in lieu of Callahan's account" until the note became due, but Callahan should have the right to withdraw it and pay the proceeds to the bank on the note; that maybe the note would be paid in some other way and, if so, the account would remain settled; that the money was to be refunded when Callahan asked for it. The check exceeded Callahan's indebtedness to the company by nine dollars, or more. After Powell had cashed the check and given Callahan credit, the mercantile company made an assignment for the benefit of creditors and subsequently was thrown into bankruptcy and the assets taken over by the United States District Court in St. Louis. Defendants Campbell and Tyrell desired to purchase the stock of merchandise from the trustee in bankruptcy under an order of said court, but could do so only by consent of the creditors of the mercantile company. Collier was a creditor for quite a large amount and the company had appropriated seventy-five dollars belonging to plaintiffs. Hence plaintiffs had a demand against the company's assets to relinquish in aid of the scheme of defendants. The testimony conduces to prove Tyrell and Campbell agreed to pay the seventy-five dollars, if Collier would accept sixty-two and one-half cents on the 'dollar in settlement of his demand against the mercantile company and if plaintiffs' demand, whether it was seventy-five dollars or nine and eighty one-hundredths dollars, was released. Pursuant to that arrangement Campbell and Tyrell bought the stock but afterwards refused to pay the seventy-five dollars. This action was brought to recover it and resulted in a judgment in favor of plaintiffs. Certain errors are assigned upon the pleadings and the rulings on requests for instructions. The only real issue of fact in the case was whether Campbell and Tyrell

promised to pay the seventy-five dollars. They denied making such a promise, but there is plenty of proof Campbell made it, and direct testimony that Tyrell assented to it. It is plain as can be both on the testimony for plaintiffs and Powell's, that the money was not turned in to the Dent County Mercantile Company to pay Callahan's account. Even according to Powell, the company was to use it no longer than it was called for to pay the note, whereupon it was to be refunded. In other words, it was in the hands of the company as a trust fund and not as part of its general assets. [Harrison v. Smith, 83 Mo. 210.] This case is not an attempt in equity to follow the trust fund, but an action on the alleged promise of Campbell and Tyrell, and we refer to the above facts because much is said about the mercantile company becoming a debtor to plaintiffs by its appropriation of the check. We do not see clearly the result of the case should be different even if the company was converted into a debtor by said appropriation; but on Powell's version, as well as Collins' and Campbell's it seems to have been a trustee. Defendants' counsel requested an instruction that unless the jury found each of the plaintiffs had paid some consideration for the promise, there could be no recovery. We are apprised of no such law. It was of no moment to defendants, and does not signify legally, whether one or all the plaintiffs furnished the consideration for the undertaking to pay the money. There was a consideration; for Collier accepted sixty-two and one-half cents of his demand against the mercantile company and plaintiffs did everything they agreed toward enabling defendants to get the merchandise released from the bankruptcy proceedings. Much is said about the supposed error of holding Tyrell responsible on Campbell's promise when the two were not partners; but this matter was submitted by the court in an instruction which we think contained nothing to justify a reversal. The promise was given before Campbell and Tyrell had ac-

quired possession of the goods, and necessarily so, because the arrangement with plaintiffs was a prerequisite to defendants' getting possession. But this circumstance is seized as proof defendants were not partners at the time Campbell promised, and it is contended he could not bind Tyrell by his (Campbell's) promise. The court advised the jury, in substance, this: that if they found Campbell agreed to pay the sum in controversy, and when he did so he and Tyrell had agreed to buy the stock of goods at the bankruptcy sale and enter into a partnership for buying and selling them, and had further agreed with each other to make such arrangements as might be necessary to get the goods out of the bankruptcy court, such facts would make them copartners in the transaction with plaintiffs and render Tyrell liable on Campbell's agreement. Without saying, as the instruction does, the facts predicated made defendants partners as to plaintiffs, we do say those facts rendered both liable on Campbell's promise. The entire testimony, including Campbell's own, is that he and Tyrell were copartners to purchase the goods and had made an arrangement with all the creditors of the mercantile company, and among them Collier, in order to get the stock out of the hands of the bankruptcy officials. There can be no doubt on defendants' own statement, their arrangement had advanced far enough to justify Campbell in agreeing in behalf of both, to pay this money if it was necessary to do so in order to get the goods. The circumstances range the case squarely under the authority of Lucas v. Cole, 57 Mo. 143, wherein two parties intending a partnership were held liable for purchases made by one and on facts like we have here. Neither that decision nor this one violates the general rule that joint liability begins, generally speaking, with the formation of the contract of partnership. [Story, Partnership (7 Ed.), sec. 146.]

Another contention much insisted on is that unless plaintiffs had paid the note to the bank, they could not recover in the present action.  The testimony of every witness who knew anything about the circumstances under which the check for seventy-five dollars was deposited with the mercantile company, or in its safe, goes to prove it was left there by plaintiffs for no other purpose than to be paid on the note to the bank.  Collier attended to the matter, but by the arrangement among the plaintiffs, they were all interested in the proceeds of the check and in having them applied on the note. In other words, the check for money, which by agreement with the two Callahans, was to be paid on the note in consideration of the sureties having released their indemnity, was either left in trust with the mercantile company, or put in its safe, and it makes no difference for the purposes of this case, which was done; for as between the company and these plaintiffs, the check belonged to the latter.  This being true, we can see no reason why the note must have been paid before plaintiffs would be entitled to recover what belongs to them.  Even Powell said the money was to be refunded whenever called for to pay the note; which clearly meant it was to be refunded prior to payment, and not on condition payment already had occurred.

This appeal has been briefed on a scale out of proportion to the amount involved, and we do not care to pursue various technical points raised by appellants. The judgment is just and as no reversible error is found, will be affirmed.  All concur.